## BRYAN and others *vs.* KNICKERBACKER.

Where A., by a deed executed previous to the revised statutes, conveyed all his real and personal estate to B. in trust that such trustee, or his assigns, or such other person or persons as he should by will appoint for that purpose, should dispose of, lease and manage the trust property, and receive the rents and income, and after deducting the expenses of the trust, should apply so much of the rents and income to the use and support of the grantor, and of his family, during his life, as the trustee should deem discreet and reasonable, and should invest and accumulate the residue of such rents and income for the benefit of the heirs of A.; and on the further trust, upon the death of A., to account for what should remain of the trust estate, and of the accumulations of the rents and income, to the heirs at law and next of kin of the grantor; *Held*, that under the law as it existed previous to the revised statutes, a person not in debt had the right to give his personal property to a trustee, for the use and benefit of those who should be the next of kin of the donor at the time of his death. And that such trust was valid, not only as to the grantor, but as to all persons claiming under him by title subsequent.

*Held also*, that as A. could not have defeated this trust by any act of his own, his creditors, whose debts arose subsequent to the creation of the trust, were not entitled to satisfaction of their debts out of the capital of the estate.

*Held further*, that the trust to receive the rents and income of the trust property, during the life of the grantor, to apply such part thereof to his support as was necessary, and to accumulate the residue for the benefit of his next of kin, at his death, was valid. But that such a trust would not be valid, under the provisions of the revised statutes.

*Held also*, that the provision, in the deed of trust, for the support of the grantor, for life, out of the income of the trust property, created an interest in such income which could be reached by judgment creditors of the grantor, by a creditor's bill in the court of chancery, upon the return of executions at law unsatisfied.

Limitations of contingent remainders in personal property, made previous to the revised statutes, are valid; provided the absolute ownership of the property is not suspended beyond the period allowed by law.

Where a *cestui que trust* has a beneficial interest in a fund, for his support and maintenance, under a valid trust created previous to the revised statutes, such interest will pass to his assignees in bankruptcy, or under the insolvent acts, or by his own voluntary assignment to a third person. Consequently it may be reached upon a creditor's bill; especially where the trust fund has proceeded from himself, and not from a third person.

THIS was an appeal by the defendants from a decree of the late vice chancellor of the second circuit. In May, 1828, the defendant, N. V. Knickerbacker, conveyed to his father, J. Knickerbacker, the other defendant in this suit, all his real and

personal estate, consisting of lands in various counties, and about $15,000 in money then in the hands of the grantee. The conveyance was in fee, but upon the face of the deed it was declared to be upon trust, that the grantee, or his assigns, or such other person, or persons, as he should, by will, appoint for that purpose, should dispose of, lease, and manage the trust property as he, or they, should deem most beneficial for the purposes of the trust, and receive the rents and income; and after deducting the expenses of the trust, should apply from time to time, so much of the rents and income to the use and support of the grantor, and of his family if he should marry and have a family, during his natural life, as the grantee, or the person or persons so appointed by him to execute the trust, should deem discreet and reasonable, and should invest and accumulate the residue of such rents and income for the benefit of the heirs of the grantor. And upon the further trust, on the death of the grantor, to account for what should remain of the trust estate, and of such accumulations of the rents and income, to the heirs at law and next of kin of the grantor, in the manner and in the proportions prescribed by the statutes of descent and distributions of this state in cases of intestacy. The trustee took possession of the trust property, under that conveyance, and out of the rents and income of the trust property allowed the grantor $900 a year, for his support; he being a single man. The residue of the rents and income of the trust property was accumulated, except some small advances made to the grantor from time to time; which accumulations, at the time of putting in the answers in this cause, amounted to about $9000; in addition to the property originally assigned, and to the advances which had been made to the grantor from time to time for his support and for the payment of his debts.

In 1841, Bryan, one of the complainants, recovered a judgment, in the supreme court, against N. V. Knickerbacker, and issued an execution thereon, which was returned unsatisfied in part; leaving due on that judgment, at the time of filing the bill in this cause, about $81. And Huntington, the other complainant, recovered another judgment against him, in that court,

Bryan v. Knickerbacker.

the same year, for. about $240, upon which an execution was issued and was returned wholly unsatisfied. The bill in this cause was thereupon filed, to obtain satisfaction of the amounts due upon those judgments respectively, out of the interest of N. V. Knickerbacker in the assigned property. The facts of the case not being in dispute between the parties, the cause was heard before the vice chancellor upon bill and answer, in connection with certain admissions of the parties. He decided and decreed that the complainants were entitled to have satisfaction of their respective judgments, and their costs in this suit, out of the rents and income then accrued, or thereafter to accrue, upon the real and personal estate embraced in the trust deed, and out of the capital of the personal estate conveyed by such deed; and that the trustee should pay the said judgments and costs accordingly. The vice chancellor further directed and decreed, that if the judgments and costs were not paid, by the trustee, within thirty days after the service of such decree and of the taxed bill of costs, the complainants might apply for the appointment of a receiver of the trust property, or for a sequestration thereof; and for such further, or such other, order, or relief, as might be equitable and proper. From this decree, both of the defendants appealed to the chancellor.

The following opinion was delivered by the vice chancellor:

RUGGLES, V. C. It is not necessary for the complainants in this case to impeach the validity of the trust deed made by the defendant N. V. Knickerbacker to his father in 1828. They are entitled to relief out of the income of the trust fund, on the basis that the deed is valid, and that N. V. Knickerbacker's equitable interest is subject to the payment of his debts. It is not to be understood, however, that the allowance to him is to depend, as between him and his father, entirely and finally upon the arbitrary discretion of the latter as trustee. The exercise of that discretion is subject to the regulation and control of this court; so far, at least, as to prevent its abuse. N. V. Knickerbacker has a vested interest, therefore, in the income of the fund,

according to the trust deed, in a sum sufficient for his support and maintenance.

It is a mistake to suppose that he can enjoy the allowance in defiance of his creditors. It is, like any other chose in action, liable to be applied to the payment of his debts. It is property, and has the incidents of property; and cannot be placed beyond the reach of his creditors. It would pass to the assignee of the cestui que trust under the insolvent laws of this state. The interest of a cestui que trust is assignable. Trusts cannot be created with a proviso that the interest of the cestui que trust shall not be aliened, or shall not be made subject to the claims of creditors. (*Lewin on Trusts,* 138. *Snowden* v. *Dales,* 6 *Sim.* 524. 1 *Id.* 66. 18 *Ves.* 429. 1 *Russ. & Myl.* 395.) By the revised statutes, (1 *R. S.* 724, § 63,) it is provided that no person beneficially interested in the receipt of the rents and profits of lands can assign, or in any manner dispose of such interests. But this deed, bearing date in 1828, is not affected by the article of the revised statutes respecting uses and trusts; nor by the first section of the article of the revised statutes respecting fraudulent conveyances. (2 *R. S.* 73, § 8.)

The case of *Hallett* v. *Thompson,* (5 *Paige,* 583,) was not precisely like this. The testator, in that case, bequeathed to Thompson, the judgment debtor, $4000, which, however, was to be retained in the hands of the executors, in trust for him, unless Thompson should require it to be paid to himself. And the will declared that neither the legacy nor the interest thereof should be liable to the creditors of the legatee. The chancellor determined that the legacy being perfectly under the control of Thompson the legatee, would pass to his assignees, under the English bankrupt or insolvent laws, or under the insolvent laws of this state; and that it ought, therefore, to be applied to the satisfaction of the complainant's judgment, in that case.

In the case now under consideration, the allowance to N. V. Knickerbacker appears, by the terms of the trust, to depend on the discretion of his trustee; and in that respect differs from the case of *Hallett* v. *Thompson.* But it has been already said that the discretion must be reasonable, and is under the regu-

lation of a court of equity. And therefore N. V. Knickerbacker's right to an allowance is as much his property as the legacy was the property of Thompson, in the case last mentioned. The difference between the two cases is therefore immaterial. The case of *Piercy* v. *Roberts*, (1 *Mylne & Keene*, 4,) is more like the present. There T. Roberts, by his last will, made in January, 1829, bequeathed to his executors £400, in trust to pay and apply, and dispose thereof, and of the interest and produce thereof, to the use and benefit of his son Thomas J. Roberts, in such smaller, or larger portions, at such time, or times, immediate, or remote, and in such way, or manner, as they, the executors, should, in their judgment, think best. And in case of the death of his son before the £400 and interest had been applied for the purposes aforesaid, the testator directed that the unapplied part thereof should sink into the residuary portion of his estate, and go as was in his will afterwards. mentioned. And the testator died in July, 1829, and his son Thomas J. Roberts, in May, 1830, took the benefit of the insolvent debtor's act. He had received from the executors some portion of the £400 before May, 1830, and some portion after his discharge and before the filing of the complainant's bill. The bill was filed by his assignees, against the executors, to recover so much of the £400 and interest as remained unpaid at the time Roberts was discharged under the insolvent act. It was argued, in behalf of the executors, that the legatee, or cestui que trust, took no vested interest in the £400, because the payment was in the discretion of the executors; but more especially because there was a limitation over to the residuary legatee in the event of the whole £400 and interest not being paid in the lifetime of the legatee. The master of the rolls, Sir John Leach, declared that the attempt to continue the insolvent in the enjoyment of the legacy notwithstanding his insolvency was in fraud of the law, and that the discretion of the executors terminated by the insolvency, and that the property passed by the assignment. This case shows not only that N. V. Knickerbacker's right to a sum sufficient for his support and maintenance out of the income of the trust fund may be subjected to the payment of his debts ·

but that by his insolvency the discretion to be exercised by his trustee, as to the amount of his allowance is ended and determined, and that his creditors are entitled to the whole fund which the trustee was authorized, under any circumstances, to apply towards his support and maintenance, or to so much as will be sufficient to satisfy their demands. This fund is the whole net income of the trust estate. (*See Brandon* v. *Robertson*, 14 *Ves.* 429, *and Graves* v. *Dolphin*, 1 *Sim.* 66.)

The graver question upon this trust deed is, whether it is not entirely void, so far as respects N. V. Knickerbacker's creditors. I mean the creditors whose debts accrued since the date and recording of the deed. In deciding that the complainant's judgment debts are to be satisfied out of the income of this trust fund, I have looked upon the fund in the same light as if it had proceeded from, and as if the trust had been created by, some person other than N. V. Knickerbacker himself. But the fund was originally his property. He has never sold it for value. On the contrary he assigned it in trust, reserving a substantial and valuable interest for his own use and benefit. And the trustee is his own father, on whose good will and affection he can be supposed to rely with all confidence at least for a most liberal administration of the trust. Apparently the object of the instrument was to provide against N. V. Knickerbacker's improvidence. If the estate had been conveyed in trust for his own use with a view to avoid the payment of debts which he intended afterwards to contract, it would have been fraudulent beyond all doubt. And why is it not equally so if the conveyance be made to avoid the payment of debts which he expected his own improvidence, or prodigality, would lead him to contract? Such debts may be perfectly honest and fair. If the creditor obtains his judgment at law, his debt must be so regarded. The debtor is legally and morally bound to pay. There is no suggestion on either side in this case, that N. V. Knickerbacker is a man of unsound mind, or incapable of conducting his own affairs. He must be regarded, like all other rational men, as the master of his own actions and of his own will. To convey away his property for the purpose of avoiding

the payment of debts which he believes he shall voluntarily contract, is much the same thing as to convey it away for the purpose of avoiding the payment of debts which he intends to contract. Such an intent is fraud in fact. Neither the recording of the deed, nor express notice of its existence, will avail to uphold it.

Voluntary settlements of property are in many instances tolerated and supported against subsequent creditors. But I apprehend this is done in those cases only where there is no good reason to believe that the leading object of the settlement was to avoid future responsibility. The allowance which the trustee in this case would be bound to make to N. V. Knickerbacker, and which all parties doubtless expected would be made, and which .n fact has been made, gives him a considerable credit and enables him to run in debt. This was its natural consequence, and must have been foreseen. If the object of the trust was to avoid the payment of such debts, it strikes me as at least extremely doubtful whether it can be supported as a transaction free from the taint of fraud. Those who would regard it as fair, look upon improvidence and prodigality as infirmities merely, and not vices. But they are moral infirmities when they are practised at the expense of others : and if, at the concoction of the trust deed, the parties had in view the consequences most naturally to be expected from it, it would be difficult to say that it ought to be upheld. But, I do not mean to decide this question. It is not necessary for the complainants' relief. They are entitled to have their judgments satisfied out of the income of the trust fund, which is sufficient for them. The complainants' costs must come out of the fund also.

*G. W. Kirtland*, for appellants. I. The amount due to the plaintiffs in each judgment being less than one hundred dollars, a creditor's bill upon those judgments cannot be entertained.

II. The trust deed is a good and valid deed in the law. It was made in 1828, before the revised statutes were passed. The grantor was not in debt, and he had a perfect right to convey and give away his property as he pleased ; and the grantee

acquired a vested interest under the deed. It was not fraudulent as to the éxisting creditors, because there were none. And as to subsequent creditors, it was not fraudulent in fact or in law. The bill does not allege or pretend that it was. It was recorded; and besides, the complainants had actual knowledge of the existence and terms of the deed. A trust deed may be made for any object not illegal, and that is not prohibited by statute. This deed was not for any object prohibited by statute, or that was illegal in itself. But the complainants have not framed their bill with the view to set aside the deed. On the contrary, the prayer is that the defendants may apply any moneys, property, real or personal, belonging to the defendant, N. V. Knickerbacker, or in which he is in any way beneficially interested or which is due from, or held in trust by, the defendant, John Knickerbacker, for N. V. Knickerbacker, to the payment of said judgments. By the deed, the trustee is to apply so much of the rents and income of the property to the use and support of the cestui que trust, as the trustee shall deem discreet and reasonable. It is only in the rents and income, therefore, (if in any thing,) that the cestui que trust has any beneficial interest. And inasmuch as the rents and income that have accrued are greatly more than enough to pay the complainants' demand, it is not deemed important to take up more time to show that the deed is a valid one. The most important inquiry in this case is, whether the cestui que trust has any such interest, under this deed, as can be reached by a creditor's bill.

III. We insist that N. V. Knickerbacker has no such estate, interest or right, under the deed, as can be reached by a creditor's bill. The statute, which is in affirmance of the common law, defines what may be taken under a creditor's bill. The language of the statute is, the court shall have power "to decree satisfaction of the sum remaining due on such judgment, *out of any personal property, money, or things in action belonging to the defendant, or held in trust for him"* &c. (2 *R. S.* 174, § 39.) The cestui que trust must have some estate, legal or equitable, or some right of action, or right to property or money, which could be enforced by him. Where by the trust deed

money is to be paid to the cestui que trust in gross, it may be seized by a creditor's bill. Where the trustee, by the deed, is to apply enough of the income for the support of the *cestui que trust*, and he is vested with a discretion as to the amount, it is not seizable by a creditor's bill. In *Coster* v. *Lorillard*, (14 *Wend.* 322,) in the court of errors, it was held by Chief Justice Savage, that in a trust deed to receive rents, &c. and to apply them to the use and support of a person, the trustee was *to judge of the propriety of the expenditure ;* and that it was different from a direction to receive and *pay over.* Senator Maison says, at page 353, it is a discretionary power. Senator Young says, at page 382, *to pay* a gross sum, or to *apply to the use of*, are different; that the trustee in the latter case is required to deal out with circumspection. Here the trust is to collect and receive the rents, issues and income of the estate, and from time to time to apply to the use and support of the cestui que trust, during his natural life, so much of the rents, issues, and income as he, the trustee, should deem discreet and reasonable. Lewin lays down the doctrine that where the cestui que trust has a *vested* interest, it passes to his assignees in bankruptcy, and that the *mode* in which, or the *time* when, he is to enjoy such interest is immaterial. (*Lewin on Trusts*, 138.) In the case of *Snowden* v. *Dales*, (6 *Sim.* 524,) £800 was assigned to trustees, in trust, among other things, to allow and pay the interest of the £800 into the proper hands of the cestui que trust, or otherwise if the trustees should think fit, in procuring for him diet, lodging, wearing apparel and other necessaries. There the cestui que trust had a vested right to the interest of the £800; it must all be paid to him or laid out for his benefit. And the court held it passed to his assignees in bankruptcy. In *Graves* v. *Dolphin*, (1 *Sim.* 66,) the testator devised his estate to trustees in trust, among other things, to pay his son John Graves an annuity of £500 for his natural life. This annuity was to be paid into the hands of the cestui que trust. He therefore, had a vested interest; and the court held that it passed to his assignees. In *Brandon* v. *Robinson*, (18 *Ves.* 428,) the testator directed that the share of his son Thomas Goom, should be laid out or invested in pub-

lic stock in the name of trustees during the life of Thomas, and that the dividends, interest and produce thereof should be paid by them, into the cestui que trust's own proper hands. There too, the son had a vested interest, and the court decided that the right of the son to the dividends passed to his assignees. In *Green* v. *Spicer*, (1 *Russ. & My.* 395,) the devise was to trustees to *pay and apply* the rents, issues and profits of the property to or for the board, lodging, support and benefit of the cestui que trust. All the rents and profits *must* be applied to his benefit. The court decided that the cestui que trust took a vested estate. In the case of *Piercey* v. *Roberts*, (1 *My. & Keen* 4,) £400 was devised to trustees in trust, to pay, and apply, and dispose thereof, and of the interest and produce thereof, to the use and benefit of the testator's son Thomas. The terms, manner, and amounts to be given or applied at different times, were left at the discretion of the trustees. Thomas had a vested right to the interest and produce, and the trustees were bound to apply it. The time, mode and amounts were somewhat in the discretion of the trustees. The court held that his interest passed to his assignees. In each of the above cases, a specific fund was set apart, and all the interest and income thereof was to be paid to, or for the use of, the cestui que trust. The mode, manner, and times of applying it was in some cases, indeed, left to the discretion of the trustees. But the interest or income was given absolutely to the cestui que trust, and must all of it be paid to or for him; which it will readily be perceived, gave him a vested interest in it.

In the case now before the court, the trustee is, from time to time, to apply to the use and support of the cestui que trust so much of the rents, issues and income as he, the trustee, shall deem discreet and reasonable. The creditors of the cestui que trust cannot, most certainly, acquire a greater interest in the fund, or in the income of it, than he had himself. And it is submitted that he had no vested interest in it whatever. He voluntarily conveyed away the property, and gave to the trustee the right to apply so much of the rents, &c. to the use and support of the cestui que trust, and only so much, as he, the trustee, should deem discreet and reasonable. The cestui que trust made his trustee the sole judge

in the case, as he had a right to do; and we submit that though the trustee should refuse to apply any of the rents or income to his use and support, the cestui que trust could have no remedy for it.   I am aware that when a trust is created by one person for the benefit of another, if the trustee fails to execute it, chancery will compel the reasonable performance of the trust.   But I have seen and know of no case where a man, competent and free to . act, after having submitted his rights to the determination of another, can control such determination or discretion; unless fraud or corruption be shown.   It having then been submitted, by the grantor in this case, wholly to the discretion of John Knickerbacker, as to how much of the income he should apply, or whether he should apply any of it to the use and support of the cestui que trust—we insist that N. V. Knickerbacker could not compel the application of the same to his support; and that he has no such interest in the income as can be reached by a creditor's bill.

But if N. V. Knickerbacker could compel a support out of the income, we contend it does not follow that his creditors can seize it.   The trustee has the entire discretion as to the dealing it out.   According to the deed he might deal it out by the meal. The reversion is given away to third persons, and the trustee is made the judge between the reversioners and the cestui que trust; and that by the act of the cestui que trust himself.   And when the cestui que trust has no vested certain interest, but something depending altogether on the discretion of the trustee, it is believed it cannot be reached by a creditor's bill.

The deed having been made before the revised statutes, is as good and valid as if the trust had been made by a third person.   It is admitted it would be otherwise now.   In our own courts, no case, that I am aware of, has been decided like the present.   The court of errors, in the case of *Coster* v. *Lorillard*, before referred to, seem to hold that such a deed would give no vested interest: and that public policy would require that such deeds should be favorably regarded.

In *Hallett* v. *Thompson*, (5 *Paige*, 583,) the cestui que trust had the right to reduce the principal sum to possession, and to ap-

ply it to his own use by merely giving an order.   There the court directed him to execute the order.   He had the absolute and uncontrolled ownership of the property—a beneficial power which could be reached under the revised statutes.   (1 *R. S.* 734, § 93.) In   *Clute* v. *Bool*, (8 *Paige*, 83,) the court held that an annuity of $400 to be paid to the cestui que trust was not seizable under a creditor's bill.   It was also held that the instalments of the annuity were not seizable until they were due; unless they amounted to the payment of a gross sum.   In *Hawley* v. *James*, (16 *Wend.* 165,) it was held that the mere right to enforce the performance of a trust is not assignable.   And at pages 118 and 262, the court discuss the question as to what is the payment of a gross sum.

IV. If the defendant, N. V. Knickerbacker, under the deed, could compel a support and maintenance, still the complainants are not entitled to recover.   They have no greater rights, as against the trustee, than he possesses; and he could not compel the advancement of moneys to carry on law suits, and to buy articles useless to himself.

V. If the complainants are entitled to any relief whatever, their demand is limited to such sum, barely, as the cestui que trust himself could claim against his trustee, from time to time, for his support.   It is insisted that if the complainants are entitled to any thing, they can claim nothing beyond such portion of the income, from time to time, as would in itself be a discreet and reasonable allowance for the support of the cestui que trust. They certainly can claim no more against the trustee, and third persons interested under the trust deed, than their debtor could claim; they represent their debtor, and are subject to the same restrictions, in regard to the trust estate, as he would be were he litigating with his trustee respecting his claims under the deed. And in passing upon the amount that should be fixed and appropriated to the claims of these complainants and the other creditors, making up the amount of $3000 debt which N. V. Knickerbacker contracted in so short a period, over and above the $900 a year which was advanced to him out of the fund, it is claimed by the counsel for the defendant, John Knickerbacker, representing as

Bryan *v.* Knickerbacker.

he virtually does, the interest of persons who are not parties to
this suit, that the sum shall be fixed at a discreet and reasonable
amount; that it shall not be paid out in gross, to satisfy these
judgments, and others which will no doubt follow. But, that
being fixed at such a sum as with ordinary prudence would be
sufficient to support the cestui que trust comfortably, but not
extravagantly, that sum be paid over by instalments from time
to time, by the trustee, in the same manner and under the same
limitations as if it were to be paid to the cestui que trust, for his
support. That this should be the rule is evident from the fact,
that if payment be ordered in gross and at once, the cestui que
trust might, by death, cease to have any claim for support long
ere a pro rata allowance would make up the amount of the com-
plainant's claims. By the deed, the overplus income of the estate,
after providing for the support of N. V. Knickerbacker, was to
be invested from time to time, for the benefit of his next of kin
upon his decease, and to be accounted for by the trustee to such
next of kin. The decree of the vice chancellor directs the judg-
ments to be paid out of the profits and income in the hands of
the trustee accrued since the deed, or hereafter to accrue, with
costs, within thirty days. This is wrong. The funds invested
for the next of kin should not be disturbed, and the decree
should have been limited to the future income of the estate.

As to costs, should the chancellor decide that though the re-
spondents, or either of them, are entitled to satisfaction of their
claim against N. V. Knickerbacker, out of the income of the
trust estate, yet, that their claim is not to a payment in gross,
and at once, but that it should be under an allowance, and by
instalments: then the respondent should not recover costs from
the fund, but should pay costs, for the reason, that they should
have applied to the trustee, and proposed to receive payment in
that manner, before suit brought. And as to the appeal, should
the decree be modified (though not set aside in toto.) as to the
time and manner of payment, that being essential as to the rights
of those interested in the trust estate, the respondents should pay
costs. The decree at all events, should be modified so as to
direct the defendants' costs to be paid out of the fund.

*S. G. Huntington,* for respondents. I. The complainants are entitled to as much of the trust fund, in the hands of John Knickerbacker, as will be sufficient to pay their respective judgments and costs of this suit, according to the terms and intent of the trust deed. 1st. Because the fund is to be applied to the use and support of Nanning V. Knickerbacker the grantor. 2d. Although the funds are to be applied as the trustee shall deem discreet and reasonable, yet he is to use sound discretion and reason in their application; and is not at liberty, arbitrarily, to refuse an appropriation of any part of the fund, even when it is requested by the cestui que trust alone. 3d. But judgments having been obtained against the cestui que trust in a court of law, and no attempt having been made to impeach or reverse said judgments, the trustee is bound, by the terms of the trust deed, to pay the same; and an application of the trust fund for that purpose would be for the "use and support" of the cestui que trust, and therefore consistent with the terms of the trust. In other words, the judgments estop the trustee from the exercise of any discretion as to the application of funds to the payment of the complainants' claim. II. The whole of the rents, profits and income of the real and personal estate, together with the personal property held in trust by John Knickerbacker, belong absolutely to N. V. Knickerbacker, the judgment debtor, and are subject in equity to the claims of his creditors, at common law as well as by statute. 1st. Because the deed creating the trust estate or fund is void as against creditors; being created by the cestui que trust himself. 2d. Because it is an attempt on the part of the judgment debtor to place his property beyond the reach of creditors, for the use and benefit of himself and heirs. (3 *John. Ch. Rep.* 481. 4 *Kent's Com.* 303, *note (c).*) 3d. Because as to the $15,008, the trust deed is null and void. (1 *R. L. of* 1813, 75. § 1. 2 *R. S.* 70, § 1, 2d ed. 5 *Cowen's Rep.* 547. 6 *Idem,* 288, *and see especially the opinion of Savage, Ch. J. in* 5 *Cowen's Rep.* 581.) 4th. Because the trust fund proceeding from, or having been created by the cestui que trust himself, he cannot claim a support therefrom as against his creditors; as in some cases he

may, where the trust fund has proceeded from some person other than himself. (5 *Paige's Rep.* 583 to 587.) 5th. Because the revised statutes subject a trust fund created by the judgment debtor himself, (like the one under consideration,) to the claims of his creditors in equity. (2 *R. S.* 102, § 41, *2d ed.*) 6th. At all events the surplus, beyond a support, can be reached for want of a valid direction for its accumulation. (8 *Paige,* '83.) III. The interest of the judgment debtor in the lands, rents, and real estate, conveyed by him to John Knickerbacker, in trust, could not have been sold under an execution at law. 1st. Because the trust being an active and not a passive trust, the legal title of the trustee is not divested by the revised statutes, but is thereby preserved. (1 *R. S.* 727, §§ 47, 48, *2d ed.* 4 *Paige's Rep.* 345, 352.) 2d. Because the trustee does not hold the legal title as a clear simple trust for the benefit of the judgment debtor alone. (3 *Paige's Rep.* 478.) IV. The direction for the accumulation of the surplus rents, profits and income, is void; and the surplus is liable in equity to the claims of creditors. (1 *R. S.* 726, § 37. *Idem,* 729, § 57.) 1st. Because the accumulation is not for the benefit of minors living at the date of the trust deed, but for the benefit of the next of kin of the grantor. 2d. Because the next of kin is John Knickerbacker, the trustee, and the father of the grantor or cestui que trust. (2 *R. S.* 97, § 75, *sub.* 7.) V. It is no objection to the jurisdiction of this court that the judgment of the complainants, Barker and Gorham, is less than $100. (*See Dix and others* v. *Briggs,* 9 *Paige,* 595, *and Sizer and others* v. *Miller, id.* 605.) VI. This case is to be governed by the revised statutes. (21 *Wend. Rep.* 147, 148. 1 *R. S.* 727, §§ 45, 46, 47, 48.) VII. If it should be said the complainants have no claim upon the income of the trust property, because they were not judgment creditors, or even creditors of N. V. Knickerbacker, at the date of the deed of trust, on the 10th of May, 1828, we insist that objection is not sustainable; because the trust property is, in law and equity, and in fact the property of the judgment debtor, and it is only important to inquire whether the debt sought to be enforced by means of a creditor's bill here, existed at the time

of an assignment of his property by the debtor in those cases where the assignment transfers all the interest of the debtor in the property assigned. VIII. Huntington is entitled to payment of his judgment, at any rate; it having been recovered for services rendered by him in respect to the trust deed.

THE CHANCELLOR. The technical objection made by the counsel for the appellants, that the judgment of one of the complainants was less than $100, cannot be sustained. That question was examined by this court in the case of *Sizer and others* v. *Miller*, (9 *Paige's Rep.* 605;) and the objection was decided to be invalid.

The vice chancellor has not, by the decree, in terms declared the trust created in this case void, as to the personal estate conveyed to the trustee. But he has done so in effect, by declaring that the judgments of the complainants, for debts created subsequent to the execution of the trust deed, were a charge upon such personal property, as well as upon the income thereof and upon the rents of the real estate; in which income and rents the judgment debtor was interested, to a certain extent, at the time of filing the bill in this cause, by the express provisions of the trust. It therefore becomes necessary to examine the question respecting the validity of the trust as to the capital of the personal property, conveyed by the trust deed, as well as to determine the rights of the respondents in relation to the rents and income of the real and personal estate conveyed in trust.

. The trust having been created previous to the revised statutes, its validity or invalidity does not depend upon their provisions; but upon the law of this state as it existed previous to the first of January, 1830. It is not alleged, in the complainant's bill, that the object of creating this trust was to defraud the creditors of the grantor in the deed; nor is it any where stated that he owed any debt whatever at the time of the creation of the trust. The simple question presented, then, as to the validity of the trust, so far as relates to that part of the capital of the trust fund which consisted of personal property at that time is, whether, as the law then was, a person not in debt had the right to give

such property to a trustee, for the sole use and benefit of those who should be the next of kin of the donor at the time of his death. It is true, this limitation in remainder is, and must remain, contingent during the life of the donor; for it cannot be determined until his death who will be his next of kin, and entitled to the property according to the terms of the trust. But it is every day's practice to limit such contingent remainders in personal property and chattels real, through the medium of a trustee. And such limitations are valid, provided the absolute ownership of the property is not suspended beyond the period allowed by law. (*Lewin on Trusts*, 142.) This part of the trust, therefore, is valid, not only as to the grantor in the trust deed but as to all persons claiming under him by title subsequent. And as he could not in any way have defeated his trust by any act of his own, it is difficult to conceive how his creditors, whose debts have been contracted subsequent to the creation of this trust, can be entitled to satisfaction out of the capital of the personal estate; in which their judgment debtor has no interest. The part of the decree of the vice chancellor which declares that the complainants are entitled to have their judgments and costs satisfied out of the capital of the personal estate in the hands of the trustee, is erroneous and must be reversed.

Previous to the revised statutes, a trust for the accumulation of the rents of real estate, or of the income of personal property, might be created, to continue for the same length of time that the power of alienation, or the absolute ownership of such property, might legally be suspended. And the accumulated fund might be limited to any person or class of persons who should be in esse at the termination of such trust. (*Thelluson* v. *Woodford*, 4 *Ves.* 227; 11 *Idem*, 112, *S. C.; Rand. on Perp.* 197.) There does not, therefore, appear to be any objection to the validity of the trust to receive the rents and income of the property during the life of the party creating such trust, and to apply so much of the rents and income as may be reasonable and proper to the support of himself and his family for the same period; and to accumulate the residue, in the meantime, for the use and benefit of those who may be his next of

kin at his death. It is true, such a trust for accumulating the rents and income of property could not now be created. For by the provisions of the revised statutes, a valid trust for the accumulation of the rents and profits of real estate, or the interest or income of personal property, can only be created for the benefit of a minor or minors who is or are in existence when the accumulation is to commence; and the accumulation must cease with the termination of such minority. (1 *R. S.* 726, § 37, 38. *Idem*, 773, § 3, 4.) But these provisions of the revised statutes cannot affect the validity of a trust of accumulation which had been created long before those statutes went into effect.

The trust for the accumulation of the rents and income, for the benefit of the next of kin, being a valid trust, in the present case, the only interest which N. V. Knickerbacker, the judgment debtor, had in the trust estate, was his right to a reasonable allowance for his support out of the rents and income thereof during his natural life. The part of the decree of the vice chancellor, therefore, which declares that the complainants are entitled to have their judgments and costs satisfied and paid out of the rents and income of the trust estate generally, is erroneous; and it must be reversed so far as respects that portion of the rents and income which, by the provisions of the conveyance creating the trust, are directed to be accumulated for the benefit of the next of kin.

But it appears that the amount which the trustee, in the exercise of the discretion vested in him by the trust deed, has hitherto considered a reasonable allowance for the support of N. V. Knickerbacker, as a single man, has been $900 per annum; exclusive of some extra allowances occasionally made to him for the payment of debts. It is evident, therefore, that if this interest of the judgment debtor, in the rents and income of the trust property, could be reached by the complainants on a creditor's bill, the amount or value of such allowance for a single year, after they had obtained a lien thereon in the hands of the trustee, by the commencement of this suit, would be sufficient to pay their judgments with interest and costs. And as a year

Bryan v. Knickerbacker.

and a half had elapsed between the commencement of this suit and the decree of the vice chancellor, there was no necessity for resorting to that part of the trust property, and of the rents or income thereof, which was limited to the next of kin, to enable the complainants to obtain satisfaction of their debts and costs. Even if the amount of the annual allowance of $900, which had accrued subsequent to the filing of the bill, had not been sufficient at that time, the decree could have directed satisfaction to be made, for any deficiency, out of the portion of the income to which the judgment debtor should thereafter be entitled, from time to time, under the provision of the trust deed for his personal support. For the interest of a cestui que trust in the rents or income of trust property, under a trust of this kind, created previous to the revised statutes, was not inalienable by the cestui que trust. It would, therefore, pass to an assignee in bankruptcy, or by virtue of an assignment under the insolvent acts. And if so, it could also be reached by a creditor's bill, in anticipation, although the rents or income had not in fact accrued at the time of filing such bill. The case is otherwise as to the interest of the judgment debtor in such a trust created since the revised statutes. For as the interest of the cestui que trust is inalienable by him before the rent or income of the trust fund has actually accrued, the surplus, which the statute has specially authorized the judgment creditor to reach in that case, cannot be reached by such creditor by anticipation. (*Clute* v. *Bool,* 8 *Paige's Rep.* 83.)

It only remains to be considered whether the interest which the judgment debtor really has, in the rents and income of the trust property in this case, can be reached and appropriated to the payment of his debts. The fund out of which the provision for the support of the judgment debtor is derived, in this case, proceeded from him, or was created by himself. No question therefore arises, under the exceptions in the sections of the revised statutes relative to creditor's bills. (2 *R. S.* 174, §§ 41, 42.) But the question is whether his right to a reasonable allowance out of the rents and income of the trust property, is one which he could himself have enforced, either at law or in equity. It is

insisted by the counsel for the appellants, that the judgment debtor has no vested interest whatever in this trust; and that if the trustee should refuse to apply any of the rents or income of the trust property to his support, he would be entirely without remedy. Such, however, cannot be a correct view of the law upon this subject. It is true the trustee, by the terms of the trust, has a very extended discretionary power as to the amount which is to be applied for the support of the cestui que trust. But the amount of the allowance which the trustee is bound to make does not depend upon the exercise of an arbitrary discretion, without reference to the situation of the cestui que trust and the amount of the property, or fund, out of which the allowance for his support is to be made. In other words, he is bound to make such an allowance as he honestly and conscientiously does deem discreet and reasonable, and not such as he shall merely *say* is reasonable. In this case, the trustee had been in the habit, for about fourteen years previous to the filing of the complainants' bill, of allowing the cestui que trust $900 annually for his support. And if, without any diminution of the income of the trust fund, or change in the circumstances or habits of the defendant, or other apparent cause, the trustee had cut down the allowance to half that amount, no one could well suppose the trustee actually thought that allowance was discreet and reasonable. In such a case this court might come to the conclusion that it was an arbitrary and unconscientious exercise of power without right, amounting to a breach of trust, and might proceed to remove him from the trust; or might refer it to a master to inquire and report what was a reasonable allowance for the support of the cestui que trust, under the circumstances of the case, and direct the payment accordingly.

In the case of *Green* v. *Spicer*, (1 *Russ. & Myl. Rep.* 395,) the trustees were, by the will, directed to receive the rents and profits of the trust estate, and to apply the same to the support and benefit of the testator's son, during his life, in such manner as they might deem proper; such application to be at the entire discretion of the trustees. And the will further directed, that the son should not have the power to sell, mortgage or anticipate

such rents and profits in any way. But the son being afterwards discharged under the insolvent act, Sir John Leach decided that the whole rents and profits should go to the assignee of the insolvent. A similar decision was made by the same distinguished equity judge, in the case of *Piercy* v. *Roberts*, (1 *Myl. & Keene's Rep.* 4.) There the trustees had an unlimited discretion to apply the trust fund for the use of the son of the testator, in larger or smaller portions, at such time or times, immediate or remote, and in such way or manner, as they in their judgment and discretion should think best. And in case of his death before the whole fund had been applied to his use, it was directed to sink into the residue of the testator's estate, and to be disposed of in the particular manner directed by the will. But the son, for whose use the fund was created, having been discharged under the insolvent act before the whole trust fund had been paid to him, the question arose whether the residue thereof should remain in the hands of the trustees, to be thereafter applied to his benefit, at their discretion, or should pass to the assignee of the insolvent. And the court held that the discretion of the trustees was determined by the insolvency, and that the fund passed by the assignment. The distinction between that case and the one now under consideration is, that in the first it was evidently intended that the whole trust fund should go for the benefit of the son at the discretion of the trustees, without reference to the question whether it might, or might not, be necessary for his support; while, in the last, the trustee has no right to devote any more of the income of the trust property to the support of the person who created the trust than he may deem reasonable for that purpose. And as to the surplus of such income, there is an absolute limitation of the same to the next of kin; except so much of that surplus as should be necessary for the support of his family, if he should marry and have a family. As the judgment debtor himself has no beneficial interest in such surplus, the complainants are not entitled to have it applied to the satisfaction of their debt.

The same distinction exists between this case and that of *Snowden* v. *Dales*, (6 *Sim. Rep.* 524,) which came before the

vice chancellor of England two years after the decision of the master of the rolls in *Piercy* v. *Roberts*. There the sum of £800 was conveyed to trustees in trust, during the life of J. D. H., or during such part thereof as they should think proper, and at their will and pleasure but not otherwise, or at such times and in such sums as they should judge proper and expedient, to pay the interest of the £800 into his hands, or to apply the same, if they should see fit, in procuring for him diet, lodging, clothing, and other necessaries ; but so that he should not have any right or demand in or to such interest, other than such as they in their uncontrolled discretion should think proper and expedient, and so that none of his creditors should have any lien or claim thereon in any event. There was also a limitation over of the interest to his widow, after his decease, if he should marry and leave one ; and an ultimate limitation over of the principal of the £800, and the *savings and accumulations of interest*, if any, to others ; after the death of both. And yet it was decided, in that case, that upon the bankruptcy of J. D. H., the whole of the interest of the £800, during his life, passed to his assignees. The ground upon which that decision was placed by the court was, that although it was evidently the intention of the person creating the trust to exclude the assignees in bankruptcy, there was nothing in the deed which amounted to a direction to the trustees to withhold the payment of the interest, and to accumulate it during the life of J. D. H. for the benefit of the ultimate remaindermen, if they in their discretion should think proper to do so. But I confess I should have come to a different conclusion upon the question of construction. I should have held that the trustees had an absolute and arbitrary discretion on that subject ; and that the assignees in bankruptcy were only entitled to so much of the interest of the trust fund as the trustees should not, in their discretion, think proper to retain and accumulate for the benefit of the ultimate remaindermen. This erroneous construction of the terms of the grant does not, however, impair the principle of the decision, that where a cestui que trust has a beneficial interest in a fund, for his support and maintenance, under a valid trust created previous to the adoption of the revised

statutes, such interest will pass to his assignees in bankruptcy, or under our insolvent acts, or by his own voluntary assignment to a third person. And consequently, it may be reached upon a creditor's bill ; especially when the fund so held in trust has proceeded from himself and not from a third person. The conclusion at which I have arrived, therefore, is, that the provision for the support of the judgment debtor, for life, out of the income of the trust property, created a beneficial interest which can be reached by this suit.

It was erroneous, in this case, to charge the costs upon the trustee personally ; as he was litigating in good faith, for the protection of the trust fund, and could not safely have paid the judgments of the complainants otherwise than under the protection of a decree of the court. For although he was the next of kin, and the presumptive heir at law of his son, at the time of the commencement of this suit, the chances are against his surviving his son ; so that his representatives will probably have to account to the children of the son, or to some other persons, as the next of kin, for the income of the trust fund beyond what is necessary and reasonable for the support of the son and his family, if he should have a family. Nor was it proper, in this case, to authorize the appointment of a receiver, to take the trust property out of the hands of the trustee, who was not alleged to be irresponsible ; the property being held by the trustee for the benefit of those who will ultimately be entitled to the capital of the fund and to the accumulated income thereof. (*See Dick* v. *Pitchford*, 1 *Dev. & Bat. Eq. Rep.* 480.) All that the complainants were entitled to claim, was the payment of their debt and costs out of that part of the income of the trust property which properly belonged to their judgment debtor. And as the trustee had no right to pay that over to him, for his support, after the complainants obtained an equitable lien thereon by the commencement of this suit, the fund in the hands of the trustee at the time of the decree was probably sufficient, and will be paid without the necessity of further expense in taking the account thereof. The proper decree, therefore, would have been to direct the debts of the complainants, as ascertained by such decree, with the interest

thereon, and their costs, to be paid by the trustee out of that part of the income of the trust property.   And also to direct that if it was not paid within a limited time, the complainants be at liberty to go before a master, upon a reference, to inquire and report the amount of such income which had come to the hands of the trustee, or which might have been received by him with ordinary diligence ; and which was applicable to the payment of such debts, interest and costs ; with a direction that the trustee pay the amount so reported, or so much as was necessary for the purpose, upon the coming in and confirmation of the master's report ; and if the whole amount should not thus be paid, that the complainants be at liberty to apply, from time to time, for further directions, periodically, as future rents and income which were applicable to that purpose should be received by the trustee.

The decree appealed from must be modified accordingly.   And to the costs of the complainants in the court below, there must be added their taxable costs upon this appeal ; to be paid out of the income of the trust fund.   The trustee must be authorized by the decree to retain his costs, in the court below and upon this appeal, out of any part of the income of the trust property in his hands.