DAVID P. THOMAS, AS EXECUTOR, ETC., OF HANNAH GRISWOLD, DECEASED, APPELLANT, *v.* CHARLES PARDEE, RESPONDENT.

*Will — life estate, with power of consuming principal — gift of remainder — validity of.*

A testator, by his will, bequeathed to his wife the use of so much of his library and furniture as she might wish to retain for life, with power to dispose of the remainder thereof; and also all his real and personal estate, " to be possessed and used by her at her discretion, and for her support and comfort during her natural life, having confidence in her that it will be used and retained, and the amount, the increase and the residue, whether more or less, left sacred to the purposes to which we mutually agreed to devote it;" he further bequeathed all his " estate, real and personal, goods and chattels, of whatever nature or kind soever in her possession and held by her, up to and at the time of her decease,'

after payment of her funeral expenses, to certain benevolent societies therein named, " to be held in trust by my executor, hereinafter named, and after her decease he is to have it divided equally between the societies above named." *Held,* that the legal title to the whole of the testator's estate was, immediately upon his death, vested in his executor, with a right in the widow to draw from the estate, out of either principal or income, so much as she might judge necessary for her comfortable support and maintenance, and that, upon her death, the whole estate as it then existed, together with all accumulations thereon, was to be paid over to the residuary legatees named in the will.

APPEAL from a judgment, entered upon the report of a referee, dismissing the complaint herein.

The action was brought by the executors of the last will and testament of Hannah Griswold, deceased, for moneys had and received by the defendant from said Hannah, and as her agent, to her use. The defense was, that the moneys in question belonged to the estate of Levi Griswold, deceased, and were, after the death of Hannah, his wife, and with the consent of plaintiff, paid over to the executor of that estate.

Levi Griswold was a resident of Middlesex county, Connecticut, and there died prior to May, 1860, leaving a last will and testament, with codicil, which were there proved on May 15, 1860, and letters testamentary issued to David Dibbell, executor, named in the codicil.

The portions of will and codicil material to this case were as follows :

" Second. I give and bequeath to my beloved wife, Hannah, during her natural life, so much of my library as she may wish to retain for her personal use and edification, she disposing of the remainder to some indigent and worthy student of theology or minister of the gospel, or to the children of my brother Eben, but more especially to my sister, Mary Birchard, and her children, on whom it is my wish, and long has been, to have some valuable remembrance bestowed. I leave all this, however, for her to judge of in the circumstances of the case.

" Third. To my dear and beloved wife, Hannah, who has been all I could expect in life, in labor, in health and in sickness, and more than all the world else to me, I give and bequeath all my real and personal estate, to be possessed and used by her at her discretion, and for her support and comfort during her natural life, having confidence in her that it will be used and retained, and the amount,

the increase and the residue, whether more or less, left sacred to the purposes to which we mutually agreed to devote it.

" Fourth. It is my wish and will, if after my decease she finds it agreeable to occupy our present dwelling, that the goods, furniture and all things remain about as they were before, except in the case of those things which to her would be useless or burdensome, or expensive, in which case she is at liberty to dispose of all such, to the best of her judgment, so as to be as much exempt as possible from care and labor in her loneliness and advanced age.

" Fifth. As my property has none of it been inherited from friends and relatives, and as none of them are, to my knowledge, in want, but, on the contrary, all received directly from the Lord, to whom it of right belongs, so all my estate, real and personal, goods and chattels, of whatsoever nature or kind soever, in the possession and held by her, up to and at the time of her decease, after her funeral expenses and grave arrangements are made, I give and bequeath, for the glory of God and the spread of truth and righteousness in this and in heathen lands, to the following benevolent societies, viz.: to The American Board of Commissioners for Foreign Missions, The American Home Missionary Society, formed in the city of New York in the year eighteen hundred and twenty-six, The American Tract Society, instituted in the city of New York, and The American Bible Society, formed in the city of New York in the year eighteen hundred and sixteen, to be held in trust by my executor hereafter named, and, after her decease, he is to have divided equally between the societies above named, share and share alike, and the same to be paid over as soon as can be conveniently and economically done, to the persons who, when the same is available, shall be acting severally as the treasurers of said societies, to be applied to the charitable uses and purposes of said societies, and under their direction.

" Sixth. Should the event of my wife's death occur at the time or before my own, an event which I have not contemplated in the previous arrangements, then, at my own decease, my executor is authorized to proceed immediately to take possession of and dispose of all real and personal estate, of every name and nature whatsoever, belonging to me at the time, as above directed, and, after my funeral expenses are met and debts are paid, is to pay over the same,

whether more or less, as soon as can be conveniently and economically done, to the several societies, or to the persons at the time the acting treasurers of the societies above named, to be shared in equally, and to be applied and used by them for the benevolent purposes for which those societies were formed.

"Lastly. I do hereby nominate and appoint my worthy and confidential friend, Walter P. Munger, of Madison, county of New Haven, and State of Connecticut, to be the executor of this, my last will and testament, revoking all other wills by me made.

" In witness whereof I have hereunto set my hand and seal this twentieth day of June, in the year of our Lord one thousand eight hundred and fifty-seven.

[L. S.]　　"LEVI GRISWOLD."

"Whereas, on the twentieth day of June, in the year of our Lord one thousand eight hundred and fifty-seven, I made and executed my last will and testament, I now make and annex the following addition to said will in the form of a codicil to said will:

" Item. I make and direct this alteration in the fifth article of my last will and testament: I give and bequeath, for the glory of God and the spread of truth and righteousness in this and in heathen lands, to the following benevolent societies, in four shares, viz.: To the American Board of Commissioners for Foreign Missions, one share; to the American Home Missionary Society, formed in the city of New York in the year eighteen hundred and twenty-six, one-half share; to the Church Extension Fund, New School Presbyterian, one-half share; to the American Tract Society, instituted in the city of New York, one share; to the American Bible Society, formed in the city of New York, in the year eighteen hundred and sixteen, one share; to be held in trust by my executor hereafter named, and after her decease he is to have divided between the societies above named as this codicil directs. Lastly, I do hereby nominate and appoint my worthy and confidential friend David Dibbell, of Clinton, county of Middlesex and State of Connecticut, to be the executor of this my last will and testament, revoking all other wills by me made.

" In witness whereof, I have hereunto set my hand and seal this 3d day of May, A. D. 1860.

[L. S.]　　"LEVI GRISWOLD."

Hannah Griswold, plaintiff's testator, afterward removed to this State, bringing with her certain bonds and mortgages, bonds, stocks and cash portion of the estate of said Levi Griswold, and gave therefor, on June 6, 1860, to executor Dibble a receipt, stating that the said property was to be "possessed and used by me for my support and comfort during my natural life, and if necessary to use any of the property hereafter specified and particularized, I am to notify the executor, and he to get the approbation of the judge of probate and grant such sums as are needed," and after specifying the property, then said: "If any of the above property is shifted from the security it now has, I am to notify the executor immediately." Real estate of the deceased was afterward sold and the proceeds or part thereof placed in the widow's hands on the same terms as the other property already in her hands. The widow delivered the greater part of the securities and money so received by her to the defendant, to receive moneys which might be paid in thereon, and reinvest such portions thereof, whether principal or interest, as were not needed by her. She retained in her own hands a part of said moneys, and made reinvestments of the same as they were paid in; and such reinvestments, whether made by defendant or by her, were made in her own name for convenience of collection, she giving to the executor, from time to time, a statement of the securities taken.

Mrs. Griswold died March 23, 1874, then being a resident of Cayuga county, and leaving a last will, in which plaintiff was appointed executor, and which' was afterwards duly proved and letters issued to plaintiff April 18, 1874. In this will she did not assume to bequeath any part of the property which is the subject of this action. At her death, she had in her own hands two mortgages, which, as the referee found, were afterwards delivered by the plaintiff to the executor, Dibbell, who, with the knowledge and consent of plaintiff, placed them in the hands of the defendant with the other securities for collection. To this finding the plaintiff excepted. The referee also found that all the moneys and securities in defendant's hands, which were the subject of this action, including the two mortgages above named, had grown out of the moneys and securities placed in Mrs. Griswold's hands by said executor, Dibbell, and represented the principal, together with the increase

and accumulation of interest thereon, not used or needed by her for her support and maintenance during her life.

To this finding plaintiff excepted. Defendant afterwards converted all the securities into money, plaintiff executing assignments to enable defendant to do so, and afterwards paid over the proceeds to Dibbell. Whether he did this before having notice of plaintiff's claim is not found by the referee, and the evidence is conflicting on the subject. What part of the fund is principal and what interest does not appear.

The referee held that the fund in defendant's hands being the principal of the estate of Levi Griswold, or such accumulations as were not needed or used by the widow for her support, belonged to that estate, and the executor, Dibbell, was entitled to the possession thereof, and plaintiff was not.

*John D. Teller*, for the appellant. The plaintiff, as executor of the will of Hannah Griswold, is entitled to all the property in the possession of the defendant as her agent at the time of her decease, and subsequently, for the purpose of settling her estate and making such distribution as the law and the rights of parties required. (*Hirschfeldt* v. *Fanton*, Anth. N. P., 361; *Boyce* v. *Brockway*, 31 N. Y., 490; *Parsons* v. *Lyman*, 20 id., 113; *Spraker* v. *Davis*, 8 Cow., 132.) At the time of her decease, Hannah T. Griswold was the absolute owner of all the property, principal and interest, in the defendant's possession, and of the mortgages subsequently held by him, except, perhaps, that portion of the said property which represented the real estate left by her husband. So far as the real estate is concerned, as the will does not give her power to devise the same, the estate in remainder created therein must be assumed to be valid, although she had the legal title during her life, and became the absolute owner of the income thereof, but, as to the personal chattels, the attempted executory bequest thereof is void as being a limitation repugnant to an absolute gift. (*Weldon* v. *Ellington*, Plowd., 521; Brookes' New Cases, § 334; 1 Rolls. Abr., 610 [5 Jac., 1]; Cro. Car., 346 [9 Car., 1]; *Hyde* v. *Parrat*, 1 P. Wm., 1, decided in 1695; *Tissen* v. *Tissen*, id., 500; *Upwell* v. *Halsey*, id., 651, decided in 1720; Fearne on Rem. [Bult. ed.], 401–416; *Sprange* v. *Barnard*, 2 Brown's Ch., 585; *Rushman* v *Filliter*, 3

Ves., 8; *Wynne* v. *Hawkins*, 1 Bro. Ch., 179 ; Fearne's Ex Dev. [Powell's ed.], 167, 226.) The following authorities sustain the rule that if the person having a life estate is prohibited from defeating the limitation over by any act of his own, then the remainder or executory devise over may be valid ; but if the first taker has power to dispose of the whole fund, and thereby defeat the limitation, the bequest over is void : *Attorney-General* v. *Hall* (Fitzg., 314–321); *Upwell* v. *Halsey* (1 P. Wm., 651); *Flanders* v. *Clark* (1 Vesey, Sr., 9); *Butterfield* v. *Butterfield* (id., 133); *Bradley* v. *Peixalto* (3 id., 324); *Ross* v. *Ross* (1 Jac. & W., 154); *Randall* v. *Russell* (3 Mer., 193); *Ide* v. *Ide* (5 Mass., 500); *Jackson* v. *Bull* (10 Johns., 19) ; *Jackson* v. *Robbins* (16 id., 537); *Patterson* v. *Ellis* (11 Wend., 259) ; *Dorland* v. *Dorland* (2 Barb., 63); *Pinckney* v. *Pinckney* (1 Bradf., 269); *Colt* v. *Heard* (Weekly Dig., vol. 4, No. 9); *Norris* v. *Beyea* (13 N. Y., 286); *Hull* v. *Culver* (34 Conn., 404) ; 14 Massachusetts 496 ; 1 Pickering, 318 ; 17 Pickering, 339 ; 1 Hilliard on Real Property (chap. 57, § 9). The will in question is analogous to one containing a specific bequest for life of things *quae ipso usu consumuntur*, in which case a bequest over is void. (*Covenhoven* v. *Shuler*, 2 Paige, 132 ; *Rapalye* v. *Rapalye*, 27 Barb., 610 ; *Smith* v. *Van Nostrand*, 3 Hun, 450 ; *Hill* v. *Hill*, 2 Lans., 43.) The moneys in the hands of Mrs Hannah T. Griswold, or in the hands of the defendant, as her agent, at the time of her decease, and which the defendant has not shown to be a part of, or to represent, the principal of Levi Griswold's estate, were either accumulations of interest or increase arising from the use of the same during her life, or property obtained by Mrs. Griswold independently of her husband's estate. The said moneys belonged absolutely to her, and must pass to her executor and be distributed among her next of kin. (*Barber* v. *Barber*, 3 M. & C., 688 ; 2 P. Wms. Ch., 500–504 ; 2 id., 26, 27, 419 ; 1 Brown Ch., 81, 335 ; 5 Vesey's Ch., 335, 522 ; 6 id., 520 ; 7 id., 95 ; 2 Black. Com. [Chitty], 514 ; *Covenhoven* v. *Shuler*, 2 Paige, 122 ; *Williamson* v. *Williamson*, 6 id., 298 ; *Brundage* v. *Brundage*, 60 N. Y., 544 ; *Tissen* v. *Tissen*, 1 P. Wms., 503 ; *Pinckney* v. *Pinckney*, 1 Bradf., 269.)

*Le Roy Morgan*, for the respondent.

MERWIN, J.:

There is abundant evidence to sustain the findings of the referee that the two mortgages held by Mrs. Griswold were delivered by plaintiff to the executor Dibbell, and by him delivered, with the knowledge and consent of plaintiff, to defendant, for collection, and that all the funds and securities in defendant's hands represented the principal of Levi Griswold's estate, or such accumulations of interest as were not used or needed by Mrs. Griswold for her support. There is no doubt about the identity of the fund. The question in the case is, what were the rights of Mrs. Griswold under her husband's will? Was she entitled to the principal or interest absolutely, or was her right limited to such parts of the principal or interest, either or both, as she might actually use or need for her support and comfort during her life? There is evidence in the case showing what construction she put on the will, but that does not control. There is no estoppel here, especially there is none against the defendant by reason of his being Mrs. Griswold's agent, and not, therefore, competent to dispute her title. He only did with the property, after her death, what is very evident she wished to have done. He was agent for the estate as well as for her. He could pay to the owner, a foreign executor, unless others had legal rights thereto The very object of his agency was to keep the fund invested for the benefit of the estate after her death. There was nothing to prevent his saying that her rights ended with her death.

We then come to the will of Levi Griswold. He, in the first place, gives to his wife, during her natural life, such portions of his library as she may wish, and, in effect, authorizes her to dispose of the remainder in such manner as she shall deem best. He then gives to his wife "all my real and personal estate, to be possessed and used by her at her discretion, and for her support and comfort during her natural life, having confidence in her that it will be used and retained, and the amount, the increase and the residue, whether more or less, left sacred to the purposes to which we mutually agreed to devote it." Then he authorizes her, in a certain contingency, to dispose of the household goods and furniture. Then, after stating the reason therefor, he gives to certain benevolent societies " all my estate, real and personal, goods and chattels, of whatsoever nature

or kind soever in her possession, and held by her up to and at the time of her decease," after her funeral expenses are provided for, and, in the same clause, adds " to be held in trust by my executor," and after her decease he is to divide and pay over to the societies. It will be observed that he authorizes her to dispose of the library and household goods, but does not, in terms at least, authorize her to dispose of any other part of his estate. As to the duration of her right, he expressly says during her natural life. As to the extent of her right, he says to be possessed and used by her at her discretion, and for her support and comfort; and he has confidence in her that she will so use and retain, that the amount, increase and residue, whether more or less, will be properly preserved for the residuary legatees. The objects of her use and possession are specified as her support and comfort; the manner of such use and possession are left in her discretion. The title to the whole is provided for in the residuary clause, in the expression to be held in trust by my executor, and with the direction to divide and pay at the wife's decease. In order to divide and pay, the executor must, of course, have legal control. It certainly was not contemplated that the widow had any rights that survived her. It was the will of the testator that the executor should all the time hold the property in trust, should permit the widow to enjoy, in the use and possession, such rights as were given her, the testator not fearing that she would use any more than was proper, and then, at her death, he providing for her funeral expenses out of his estate; whatever was left, the executor, the trustee, should divide. The estate was to be kept together, its title in the executor, its physical custody in the widow, its accumulation was to continue, the widow was to take what she chose for her support and comfort, and whatever, at her death, was left, be it principal or interest, was to be divided by the executor. It seems to me there can be no doubt as to the intention of the testator. He did not design to give his wife either the principal or interest as such, but whatever she needed for her comfort and support, she being the judge. She could take out from the estate as a whole, but what she did not take out, what remained at her death, was to go to others. The same principle, exactly, as a question of intent, as would have existed had the whole fund been deposited in bank at interest, with the right to the widow to draw

as she chose for certain purposes, and what she did not draw to go, at her death, to others.

It remains to consider whether there is any legal principle to interfere with the operation of the intent of the testator as above indicated. The case of *Smith* v. *Van Ostrand* (64 N. Y., 278) is authority for the proposition, that where there is a pecuniary legacy to a widow for her support, with power to use such part of the principal as may be necessary for that purpose, and remainder over, such remainder is valid, although the fund is placed in the possession of the first taker, and the bequest over will carry whatever is left, not used by the first taker. The conditional power of disposition in the first taker does not render the gift over repugnant and therefore void. That action was trover by the remainderman for the security which represented the balance of the fund left and such form of action was sustained. If the gift over of the balance of the principal was good, the gift of the balance of the principal and interest, if that was the intent of the testator, would also be good, unless there is a legal objection to such an accumulation. Such objection I do not understand to be made in this case. There would be none at common law (*Bryan* v. *Knickerbocker*, 1 Barb. Ch., 409), or under our statute. The first taker, as far as she had control, would be a trustee for specific purposes. It was her duty to preserve the identity of the fund. She did so, and left the property in such shape, that the holder of the legal title, the executor of her husband, could immediately at her death retake and resume the custody that followed the legal right to control.

I see nothing that will interefere with carrying out the intent of the testator. It follows that the plaintiff was entitled to no portion of the fund.

Judgment should be affirmed, with costs.

Present — TALCOTT, P. J., SMITH and MERWIN, JJ.

Judgment affirmed, with costs.