### COLLISTER v. FASSITT.

(Supreme Court, Appellate Division, First Department.    June 19, 1896.)

WILLS—ABSOLUTE BEQUEST—DIRECTION AS TO USE.

    Testator "directed" his wife, out of certain property bequeathed to her, to use so much for the support of testator's niece, who had been brought up as a member of testator's family, as the wife should "from time to time, in her discretion, think best to do." *Held*, that the mandatory effect of the "direction" was not nullified by the subsequent clause giving the wife a discretion in executing it.    38 N. Y. Supp. 601, reversed.

Appeal from special term, New York county.

Action by Georgie S. Collister against Amelia A. Fassitt.    From a judgment sustaining a demurrer to the complaint (38 N. Y. Supp. 601), plaintiff appeals.    Reversed.

The facts as stated in the complaint, and admitted by the demurrer, are as follows: The plaintiff had been for many years a member of the family of her uncle, George B. Scranton, who had educated her, maintained her, and brought her up as a member of his family, and continued to do so until his death, which occurred in the month of December, 1888.    By the will of said Scranton he provided as follows: "Fourth. I direct my wife, Amelia A. Scranton, out of the property hereinafter given and bequeathed to her by this will, to use so much thereof for the support and benefit of my niece, Georgie S. Collister, as my said wife shall from time to time, in her discretion, think best so to do.    Fifth. I give and bequeath to my executor and executrix, hereinafter named, the sum of twenty thousand dollars ($20,000), upon trust, to invest the same, and to pay the net income thereof annually to my wife, Amelia A. Scranton, during her lifetime; but on or after the death of my wife, Amelia A. Scranton, I direct my surviving executor to pay out of the net annual income of said twenty thousand dollars ($20,000) as so invested to my niece, Georgie S. Collister, if she shall then be unmarried, the annual sum of one thousand dollars ($1,000), in equal quarterly installments of two hundred and fifty dollars ($250), until the marriage of my said niece, Georgie S. Collister, and if my niece, Georgie S. Collister, shall never marry, for and during her natural life; but if my said niece, Georgie S. Collister, shall, at the death of my wife, Amelia A. Scranton, be married, then I direct that my said niece, Georgie S. Collister, shall take nothing under this bequest.    Sixth. I give and bequeath to my executor and executrix hereinbefore named the sum of fifty thousand dollars ($50,000), upon trust, to invest the same, and to pay the income thereof to my wife, Amelia A. Scranton, annually, until my daughter, Amelia E. Scranton, shall arrive at the age of twenty-eight (28), and then I direct that my executor and executrix transfer to my said daughter, Amelia E. Scranton, the securities representing said fifty thousand dollars ($50,000) so invested."    "Eighth. I give, devise, and bequeath all the rest, residue, and remainder of the estate, both real and personal, of which I shall be seised or possessed, or to which I shall be entitled at the time of my death, to my wife, Amelia A. Scranton, absolutely."    The wife, Amelia A. Scranton, is the defendant in this action, she having, since the testator's death, inter-

married with one John B. Fassitt. She has received from her husband's estate an amount exceeding $100,000. The defendant, notwithstanding requests so to do, has refused to make any adequate provision for the support or benefit of the plaintiff. From October 1, 1889, to July, 1893, she contributed to such support the sum of $25 per annum, and since that time has made no contribution whatever for that purpose, but has applied the whole of the estate and income received under her husband's will to her own use, so that the plaintiff has been compelled to, and has for a long time, supported herself by her own exertions. The plaintiff has never married.

Argued before. VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Hamilton Wallis, for appellant.
John R. Dos Passos, for respondent.

O'BRIEN, J. The question presented is, did the testator intend to create a trust or impose a charge upon so much of his estate as came into the possession of his wife for the payment of an amount adequate for the support of his niece? The learned judge below answered this question in the negative, on the ground that the words used in the will were "precatory," and imposed no binding obligation on the wife, the testator leaving the question of support or nonsupport entirely to his wife's unlimited discretion. In determining whether this view is correct we should recall what was well said in Colton v. Colton, 127 U. S. 312, 8 Sup. Ct. 1164:

"If there be a trust sufficiently expressed and capable of enforcement by a court of equity, it does not disparage, much less defeat, it, to call it 'precatory.' The question of its existence, after all, depends upon the intention of the testator as expressed by the words he has used, according to their natural meaning, modified only by the context and the situation and circumstances of the testator when he used them. On the one hand, the words may be merely those of suggestion, counsel, or advice, intended only to influence, and not take away, the discretion of the legatee growing out of his right to use and dispose of the property given as his own. On the other hand, the language employed may be imperative in fact, though not in form, conveying the intention of the testator in terms equivalent to a command, and leaving to the legatees no discretion to defeat his wishes, although there may be a discretion to accomplish them by a choice of methods, or even to define and limit the extent of the interest conferred upon his beneficiary."

It will thus be seen that in this, as in all cases involving the construction of wills, the intention of the testator is first to be ascertained; and for this purpose we are privileged to consider the words of the instrument itself, and the circumstances under which it was executed; and, when ascertained, that intention must control in determining whether the language was precatory or mandatory. Bearing in mind the situation of the plaintiff as a member of the testator's family, occupying, as she did, towards him a relation of a child whom he had brought up, supported, and educated, and for the continuance of whose support after the death of the wife he had provided, in the event of her not marrying, we are to determine whether, during the period between his death and that of his wife, the testator was indifferent to or made no provision for the plaintiff's support. The words "I direct," with which the clause begins, are mandatory; and, while this would not be controlling if from the context it could be seen that they were not intended as such,

still we can find nothing in the language which follows to impair or take away from the force of this command thus placed upon the wife to support the plaintiff. The words are, "I direct my wife, * * * out of the property hereinafter given and bequeathed to her by this will, to use so much thereof for the support and benefit of my niece * * * as my said wife shall from time to time, in her discretion, think best so to do." This language, we think, imposes upon the wife the duty of supporting the plaintiff, leaving only the details as to the amount and time when payable to the wife's discretion. It must not be forgotten that testamentary provisions for support and education are favored by the law, and are to be liberally construed in favor of the dependent beneficiary; and it would be transgressing this rule, as well as doing violence to the language of the testator, and disregarding what we take to have been his intention, to hold that the question of support or nonsupport was a matter entirely within the wife's discretion.

In the court below reliance was placed upon the case of Lawrence v. Cooke, 104 N. Y. 632, 11 N. E. 144, as decisive. There, after an absolute gift of the residuary estate to the defendant, the testator added:

"I commit my granddaughter [the plaintiff] * * * to the charge and guardianship of my daughter [the defendant]. * * * I enjoin upon her to make such provision for said grandchild out of my residuary estate, * * * in such manner and at such times and in such amounts as she may judge expedient and conducive to the welfare of said grandchild, and her own sense of justice and Christian duty shall dictate."

It was therein held that upon this disposition no trust was created, and no charge imposed upon the property passing to the defendant; Judge Rapallo, in his opinion, saying:

"If the clause had been that the testator enjoined upon the defendant to make suitable provision out of the residuary estate for the support of the plaintiff, there would be force in the argument; not, indeed, that the defendant took the residuary estate in trust, but that she took it subject to a charge, the amount of which might be ascertained by a court of equity, and satisfaction thereof decreed. But such is not the language of the will. * * * There was nothing in the will which required her to provide for the support of the grandchild during her minority. She was living with her father out of the state. No obligation was imposed upon the defendant by her father's will to indemnify the father of the plaintiff for her support, or to furnish him with means therefor. The provision in the will was not intended for the benefit of the father of the plaintiff, nor to relieve him from his legal obligation to support his own child. All these matters were left wholly to the discretion of the defendant, uncontrolled by any consideration except, to use the language of the testator, what 'her own sense of justice and Christian duty shall dictate.'"

That case is clearly distinguishable from this. There the granddaughter resided with and was being supported by her father, and did not need anything from the testator's bounty for that purpose; and it was, therefore, not to be presumed that the testator intended to contribute for the benefit of the father of his grandchild. Here the testator had assumed the obligation of providing for his niece during his own life; and that he intended to continue that obligation is shown by all the provisions of his will, not only during the life of his wife, but ever afterwards as long as she remained unmarried, which meant, until she had some one who could take

up and discharge that duty. Moreover, in Lawrence v. Cooke, the court said that, if the provision had been for the support of the plaintiff, there would have been force in the argument that the beneficiary took her legacy "subject to a charge the amount of which might be ascertained by a court of equity and satisfaction thereof decreed." The argument which was thus wanting in that case is here present, because the provision is for the support of the plaintiff. In Phillips v. Phillips, 112 N. Y. 197, 19 N. E. 411, cited by the learned trial judge (which is not a controlling authority, because unlike in its facts), the case of Lawrence v. Cooke was referred to and distinguished. There the testator, after a gift of all his estate to the plaintiff, his wife, made this provision: "If she find it always convenient * * * to give my brother Edwin W., during his life, the interest on $10,000 (or $700 per annum), I wish it to be done." Held, that the provision contemplated, not plaintiff's choice or preference, but her pecuniary condition each year; that the intent of the testator was to charge the annuities upon the gift to his wife, provided, and provided only, that the payment in any year would occasion her no inconvenience; and that, therefore, the brother was entitled to the annuities withheld; that words expressive of a wish or desire in a will, if so definite as to amount and subject-matter as to be capable of execution by this court, may and will if such appears to have been the intention of the testator, create a trust or impose a charge. This last case, we think, furnishes a strong argument in favor of the construction which we have adopted, regarding, as we do, the language here used as much stronger and more expressive in favor of the creation of a trust or the imposition of a charge than that in the case of Phillips v. Phillips. And in applying the test we think that here the subject-matter is capable of execution by the court, because the question of what amount would provide a reasonable support is easy of ascertainment; and the language employed, "to use so much thereof for the support and benefit of my niece," is the equivalent to a direction to use so much as would be required for necessary and suitable support. Undoubtedly, the court cannot exercise a discretion which the testator commits to another, but it can see that a discretion confided is exercised in a reasonable, honest, and proper manner; and for an abuse of such discretion the court will afford a remedy.

In Browne v. Paull, 1 Sim. (N. S.) 92, the court says:

"It must not be taken that in either of those cases the mother would have appropriated the fund to her own purposes without maintaining the children. That is certainly not the doctrine of this court. * * * The parent to whom trustees are directed to pay dividends under a bequest like the present is clearly bound to apply a competent sum to the maintenance of the child or children, and, however difficult it may be to decide what is the amount to be applied, yet this court holds that to be a matter capable of being ascertained, and will compel the parent to do what is right."

Costabadie v. Costabadie, 6 Hare 410; Chase v. Chase, 2 Allen, 101.

And in the very case of Lawrence v. Cooke, supra, it is said:

"If the clause had been that the testator enjoined upon the defendant to make suitable provision out of the residuary estate for the support of the

plaintiff, there would be force in the argument; not, indeed, that the defendant took the residuary estate in trust, but that she took it subject to a charge, the amount of which might be ascertained by a court of equity, and satisfaction thereof decreed."

While it is a matter, then, of no importance whether we regard the language of the testator as creating a trust or imposing a charge in favor of the plaintiff, we think, in either aspect, that while there was a discretion which was to be exercised fairly and reasonably in favor of the plaintiff, it was not in the power of the wife to disregard the trust or charge in its entirety by refusing to make any provision for the plaintiff. While the manner and time and quantum of support were within defendant's discretion, it was not left to her to determine whether she would or would not provide support for the plaintiff. The testator intended that provision should be made for his niece, and, just as in his lifetime, while maintaining and supporting her in his home, he used his own discretion and judgment as to what was proper and suitable in the way of support, he, after his death, imposed it as a charge or trust upon his wife to support her, and in that connection gave his wife the same discretion as he had exercised while living. And as emphasizing his intention that she should always be supported, he directed that after the death of his wife, and until his niece should marry, the sum of $1,000 should be paid to her annually during her life. It is impossible, therefore, reading the entire will in the light of the surrounding circumstances, not to come to the conclusion that the testator had assumed and meant to continue the duty of providing support for his niece, and the discharge of this duty after death he confided to his wife; and, she having admittedly repudiated what should have been regarded as a sacred trust, the court can compel her to fulfill it in a fair and reasonable manner.

Our conclusion, therefore, is that the demurrer should have been overruled, and that the judgment should be reversed, with leave to the defendant to withdraw the demurrer and answer on payment of the costs in the court below and costs of this appeal. All concur.