CLARK et al. v. CLARK et al.

(Supreme Court, Special Term, New York County.  January, 1898.)

1. WILLS—CONSTRUCTION.

After making specific bequests, testator gave one-half of the remainder of his estate to trustees, to invest the same, and pay a portion of the income to his son for his support as long as he lived, and the remainder for the support of the son's wife and their children, and directed that, if the son should die, his share of income be paid to his wife for herself and children, and, should she die, what would have been paid to her should be paid to their guardian if they were minors; that if all the children be of age, the income which both she and they received should go to those surviving in equal parts; that if both the son and his wife die, leaving children, the trust fund should then be held until all had attained the age of 30 years, when each should be given an equal share. *Held*, that the estate left in trust for the benefit of the son and son's wife and children vested on testator's death in the four children, subject to the life interests of their parents, and subject to be defeated as to any such child by death without issue during the running of the life estates.

2. SAME—LIMITATION OVER.

Testator gave to his grandson $20,000 in trust until he reached 30 years of age, when he took the principal and additions. He further provided that, should his grandson die before reaching the age of 30 years, the bequest should be added to the trust fund provided for testator's son, his wife and children. By the terms of the will, the son was to share the income thereof during his life with his wife and their children, and, should he die prior to his wife, his income was to be paid to her for the use of herself and children, and, should she die, what was to be paid to her under the will should be paid to their guardian, if they were minors, and, if all were of age, the income which she and they both received was to go to those surviving in equal parts, and, should both son and wife die, leaving children, the trust fund should then be held until each had attained the age of 30 years, when each was to take an equal share. *Held*, that the limitation being for more than two lives in being, it should be cut off, and the bequest construed as a direct gift to the grandson, with postponement of actual delivery until he attained the age of 30 years, and, should he die before attaining that age, the principal sum would go to his heirs, the condition subsequent devesting the legacy being invalid.

3. SAME—INVESTMENT OF TRUST FUND.

Where, by the provisions of a will, a trust fund is directed to be invested in first mortgage notes secured on real estate in a certain city, the direction is mandatory as long as compliance with it remains feasible.

4. SAME—DISCRETION OF TRUSTEES.

Where testator directs that trustees shall invest the trust fund therein referred to in first mortgage notes, or other first-class securities, which will

bear as high a rate of interest as such trustees shall deem consistent with the safety of the investment, the trustees are bound only to see that the securities are first class, and that they are safe.

**5. SAME—DUTIES OF TRUSTEES.**

Where a will provided that of the income of a trust fund a part was to be paid to a son, and the remainder to the son's wife for the use of herself and their children, on payment by the trustees of the amount due to the wife their responsibility ceased, and they are not chargeable with the duty of supervising her expenditure of the same.

**6. SAME—SUPERVISION OF THE COURT.**

Testator directed that the income of a trust fund, amounting to about the sum of $5,000 per annum, should be paid as follows: Such a share thereof semiannually to his son as the trustees think necessary for his support, keeping in view the necessities of his wife and children, and the remainder of the income semiannually to his wife for the use of herself and children; and in providing for the support of his son's wife and children he conferred large discretion as to how they should divide the income, desiring that they should act with reference thereto as he would act if living. *Held* that, however large the discretion of trustees may be in the execution of the trust, it is subject to review of court to correct any abuse in its exercise, and, subject to the right of the son to apply at any time to the court to modify any allowance made, the trustees are free to act according to their own conscience, one-quarter of this income not being deemed an excessive allowance for the comfortable support of the son, the remaining three-fourths for the wife and children, subject to modification as circumstances are disclosed.

Action by Nathan Clark and others against Harrison Clark and others to construe the will of Nathan Clark, deceased.

F. L. Crawford, for plaintiffs.
Henry N. Tifft, for defendant Harrison Clark.
James Armstrong, for defendant Josephine L. Clark.
Pierre M. Brown, for defendant Harrison L. Clark, Jr.
William W. Jenks, for defendants Ethel Mary Clark, Violet Amelia Clark, and Gladys Clark.

FREEDMAN, J. This action is brought to construe the will of Nathan Clark, deceased, in reference to the trusts created by the second and third clauses thereof. Said clauses are as follows, to wit:

"Second. I give and bequeath to my grandson Harrison Clark the sum of twenty thousand dollars ($20,000), to be held in trust for him by my son Nathan Clark, Percy B. Heilner, and Gilbert Holmes Crawford, until he shall have arrived at the age of thirty years, when said trustees or their successors shall pay over to him the principal of this bequest, together with such additions thereto as may then be remaining in their hands. I direct that said trustees shall, as soon as practicable after my death, invest said sum of twenty thousand dollars ($20,000) in first mortgage notes, secured on real estate in the city of Chicago, Illinois, and that the income from such investment shall be paid semiannually to his guardian, until he shall have attained his majority, and then semiannually to him, until he shall have attained the age of thirty years as aforesaid.

"Third. I hereby give, devise, and bequeath one-half of the remainder of my estate, of every kind and nature whatsoever, and wheresoever situated, to my son Nathan, to be his absolutely, and the other half of said remainder I give, devise, and bequeath to my son Nathan Clark, Percy B. Heilner, and Gilbert Holmes Crawford, in trust for the following purposes: (1) To invest said trust fund in first mortgage notes, or other first-class securities, which will bear as high a rate of interest as said trustees shall deem consistent with the safety of the investment. (2) To pay semiannually so much of the income derived from such investment as they may think necessary for the comfortable support of

my son Harrison, they keeping in view the necessities of his wife and children, and the remainder of such income semiannually to Josephine, wife of my said son Harrison, for the use of herself and children. In thus providing for the support of my said son Harrison and his wife and children, I intend to and do give to my said trustees large discretion as to how they shall divide such income, desiring that they should act with reference thereto as they think I would act if living. In the event of the death of my grandson Harrison before he shall have attained the age of thirty years, I direct that the bequest hereinbefore made to him shall be added to the trust fund provided for my son Harrison and his said wife and family, to become a part thereof, and to be managed by them, my said trustees, in the same manner as they are directed to manage the specific bequest herein made to them for the use of my said son Harrison and his wife and family. In the event of the death of my said son Harrison prior to the death of his said wife, Josephine, I direct that the portion of said income which would otherwise under the provisions of this will be paid to him shall be paid to his said wife, Josephine, for the use of herself and children, and, in the event of her death, that the portion of said income which would otherwise be paid to her for the use of herself and children shall be paid to the guardian of such children, if they are minors. In the event, however, that at the time of the death of said Josephine all of the children of my said son Harrison and his said wife, Josephine, shall have attained their majority, then the portion of said income which would have been paid to their mother, if living, for her and their use, shall be paid in equal parts to such of said children as may then be surviving. In the event of the death of my said son Harrison and his said wife, Josephine, leaving children surviving them, I direct that the trust fund herein provided for them and their children shall be held by my said trustees or their successors until the youngest of such surviving children shall have attained the age of thirty years, when each one shall receive an equal portion of the fund so held in trust for them by my said trustees."

The testator, Nathan Clark, died May 1, 1895. At the time of his death he was a resident of the state of New York, and a widower, and left, him surviving, his son Nathan Clark, a plaintiff herein, and his son Harrison Clark, a defendant herein, his only heirs at law and next of kin, both of whom are now living. The defendant Josephine Clark is the wife of the testator's son Harrison, and the defendants Harrison Clark, Jr., Ethel Mary Clark, Violet Amelia Clark, and Gladys Clark are all the children of said Harrison and Josephine, who survived the testator, and are all still living, and under age. The questions arising upon the paragraphs above set forth, and as to which the judgment of the court has been invoked by the complaint in this action, are as follows: First. Whether the trust created by said testator in the second paragraph of said will for his grandson Harrison (said grandson being the defendant Harrison Clark, Jr.) is valid in whole or in part; whether the said provision for said grandson can be sustained as a direct gift without reference to the validity of the trust subsequently created; whether the trust is valid at all events during the lifetime of the said testator's grandson, and whether, if valid to that extent, and no further, the principal of said fund shall be paid to the said grandson if he arrives at the age of 30 years, or to his legatees or next of kin if he die before reaching that age, or whether said trust fund vested in the testator's next of kin upon his death, subject only to the life interest of his grandson Harrison. Second. Whether the trust created as to one-half of the residue of testator's estate in the third paragraph of said will is valid and enforceable in whole or in part; whether the said trust, if not valid in its entirety, is valid during the

lives of the defendants Harrison Clark and Josephine Clark; whether, upon the death of the survivor of the said defendants Harrison and Josephine Clark the said fund held in trust during their lives will vest in absolute ownership immediately, share and share alike, in their then surviving children, with postponement of payment of the shares until the youngest of such surviving children shall reach the age of 30 years, the income of the shares to be paid meanwhile in equal parts to such surviving children respectively, or whether the said fund so held in trust vested on the testator's death in his next of kin, subject only to payment of the income thereof to the defendants Harrison Clark and Josephine Clark during their lives, as directed in his said will, the said fund to be distributed to such next of kin of testator upon the death of the survivor of said life beneficiaries; and whether, in the event last above supposed, the said defendant Harrison Clark has the right to assign or dispose of by will any interest in remainder in said trust fund. Third. Whether, if the said trust created by the third paragraph of said will in one-half the residue of said estate be declared valid in whole or in part, the trustees appointed therein are authorized, by the terms thereof, to invest said fund in securities which, in their opinion, are "first-class," without regard to the usual rule governing investments by trustees, and whether said trustees are authorized or obliged to invest the trust fund for Harrison Clark, Jr., as directed in said will. Fourth. Whether the said trustees are charged with any, and, if any, with what, responsibility respecting the disposition of the income to be paid to the defendant Josephine Clark for the use of herself and her children after the same has been so paid to her, or whether, under the said will, she is invested with full discretion to determine what part of the income so paid to her shall be used for the benefit of her children.

The intention of the testator, as revealed by the general scheme of the will, was to set apart the sum of $20,000 to the use of his grandson, the defendant Harrison Clark, Jr., and to create a trust for that purpose, and, after having done this, to divide the remainder of his estate into two equal parts, one of which was to go immediately and absolutely to his son Nathan Clark, while the other was set apart in trust for the benefit of his son Harrison and said son's family. Both trusts, viz. the trust for the benefit of the grandson and the trust for the benefit of the son Harrison and his family, have reference to personal property, and both are, when each is considered in its entirety, and full effect is given to each, in contravention of the statute forbidding the suspension of the absolute ownership for more than two lives in being. The reasons are as follows:

As to the residuary estate. One-half of the residuary estate is to be held in trust for the joint lives of Harrison and Josephine L. Clark, and upon the death of the survivor of these two the trust is to continue until the youngest of their children who may survive them shall have attained the age of 30 years, when each of said surviving children is to receive an equal portion of the principal of the trust fund. Thus it appears that the fund in question may remain in the hands of the trustees for two lives, and for an uncertain period after the expiration of these two lives.

As to the trust fund of $20,000 for the benefit of the grandson Harrison Clark, Jr. This fund is to be held in trust for the benefit of said grandson until he shall reach the age of 30 years, when the principal is to be paid to him, he to receive the income meanwhile. But, if he die before reaching the age of 30 years, then the principal is to be added to the other trust fund created for the benefit of the testator's son Harrison and his family, and is thereafter to be treated as a part of the latter. Thus the absolute ownership of the $20,000 fund may possibly be suspended for the life of the testator's grandson, and also for the lives of the testator's son Harrison and the wife of the latter.

Now, if either or both of these trusts were declared wholly invalid, and the rest of the will be permitted to stand, results would follow against which the testator clearly intended to guard by making a will. If the trust of $20,000 for the benefit of his grandson be declared void, the latter would lose all benefit thereunder, and yet the clear intent of the testator was to make a special provision for him over and above his ordinary share. So, upon a careful reading of the entire will, the clear intention of the testator was, after the creation of the trust fund of $20,000 for the benefit of his grandson, to divide the remainder of his estate into two equal portions, one of such portions to be given to his son Nathan absolutely, and the other portion to be held in trust for the benefit of his son Harrison and his family. There is no intention which can be read into the will that Nathan should have more than one-half of said remainder, yet, if the trust for the benefit of the son Harrison and his family shall be declared void, and the rest of the will declared valid, Nathan would be entitled to one-half of the remainder absolutely, and one-half of the fund in trust, or three-fourths of the whole remainder; which was clearly not the intention of the testator. Again, if the trust last referred to shall be considered good during the lives of Harrison and Josephine Clark, and invalid thereafter, then the whole trust fund after the death of Harrison and Josephine will go to the heirs of the testator, one-half thereof to the testator's son Nathan absolutely and the other share to the surviving children of Harrison, which will give Nathan three-fourths of the entire remainder of the estate, which was clearly not the intention of the testator. In every aspect of the case it would be clearly against the wishes of the testator, as declared in his will, as well as manifestly unjust to Harrison and his family, to give three-fourths of the estate to Nathan; and hence it seems that, if the trust for the benefit of Harrison and his family must be declared void, the whole testamentary disposition attempted in the third paragraph of the will should be declared void. But this would also lead to a result against which the testator wished to guard. For some reason the testator desired not to give the control of that portion of his estate placed in trust for his son Harrison and family directly to Harrison, and yet, if the said trust fails, and the court decides the whole third paragraph void by reason of the void trust, then one-half of the estate will go to, and be under the absolute control of, Harrison. It therefore remains to be seen whether a liberal construction cannot be adopted which will validate and carry into effect at least the main part of the testamentary scheme of the testator, and yet not be in violation of the law of this state. If

this can be done, it should be done, especially as the rule is well settled that partial intestacy should be prevented where, by a liberal and yet feasible construction, it is possible to avoid it.

A search for some case which has exactly the same state of facts as the one before the court has resulted in finding no case which fully covers the question here presented. The court of appeals says "each case must rest upon its own peculiar facts." Greene v. Greene, 125 N. Y. 512, 26 N. E. 739. There are numerous cases, however, which hold that, where a trust is in part good and in part bad, the good may be retained, and the bad stricken out, as long as the intention of the testator and the general scheme of the trust can be carried out.

In the case of Harrison v. Harrison, 36 N. Y. 543, the court of appeals says:

"It is a fundamental principle of construction in regard to all instruments and contracts that the instrument should rather be made available than suffered to fail. Effect should be given to the whole instrument, and to each part of it, if it can be done without violating the rules of law." "The principle is now well settled that the courts lean in favor of the preservation of all such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator." Page 547. "It is no objection to the application of this rule to the case at bar that the limitations as well those which are good as the one alleged to be bad are embraced in a single trust. A single trust created for two purposes, one lawful and the other unlawful, is good for the lawful purpose, although void for the unlawful one." Page 548.

To the same effect are Van Schuyver v. Mulford, 59 N. Y. 432; Manice v. Manice, 43 N. Y. 303; Brown v. Richter, 76 Hun, 472, 27 N. Y. Supp. 1094; Kennedy v. Hoy, 105 N. Y. 134, 11 N. E. 390; Henderson v. Henderson, 113 N. Y. 15, 20 N. E. 814.

In the recent case of Greene v. Greene, 125 N. Y. 506, 26 N. E. 739, the following significant language was used by the court of appeals at page 512, 26 N. E. page 741:

"If it is urged that the inhibition against a partition or a division of the estate for a period of six years and a restriction upon the power of alienation are provisions which, for their illegality, affect the will, the answer is that, as invalid limitations upon the free ownership of the property devised, they are void, and may be disregarded. The present case illustrates the peculiar character of cases involving a construction of wills. Each case must be determined upon its own particular facts and features, and former precedents are rarely availing in the office of construction. The supreme importance of giving effect to the last will of the deceased requires the court to search out his intention, and to validate his scheme, unless to do so would contravene the statute. The endeavor is to find a way of upholding the will, not of breaking it down; and thus in every case the inherent purpose, if lawful, should be effectuated through what legal channels of construction may be open. We should not make a new will for the testator, and we need not strain to support his testamentary plan, if the object is unworthy or commands our just condemnation."

The question, then, arises in the case at bar whether the general principles enunciated in the foregoing cases can be applied so as to cut off the ulterior limitation over contained in the trust created by the third paragraph of the will. If this ulterior limitation over be cut off, then, and in that event, the evident intention of the testator can be carried out so far as the main part of the trust is concerned. From the oral argument it seems that all of the parties interested desire that the trust may be declared valid. But such ulterior limitation

over cannot well be cut off unless it then can be held that, notwithstanding the devise of the said trust estate in form to trustees for the purposes of the trust, the estate so created by the testator vested upon his death in the four children then living of Harrison and Josephine Clark, subject to the life interests of their parents, and subject to be defeated as to any such child by death without issue during the running of the life estates. The question whether, in that case, there is such a vested remainder within the limits stated, involves a careful examination of the state of the law under the statute against perpetuities existing at the time of the death of the testator. The trust under consideration relates to personal property. As to such property, the statute at that time provided, and still provides, that "the absolute ownership of personal property shall not be suspended by any limitation or condition for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or, if such instrument be a will, for not more than two lives in being at the death of the testator; and that in all other respects limitations of future or contingent interests in personal property shall be subject to the rules prescribed in relation to future estates in real property." 2 Rev. St. (9th Ed.) p. 1857; Personal Property Law (chapter 47, Gen. Laws) 1897, p. 507, c. 417, § 2. At one time it was thought that suspension of the absolute ownership of personal property could be effected only by the creation of a future contingency, and not by the creation of any personal property trust. But it is now decided that it may also be occasioned by certain trusts, even though all interests are absolutely vested. Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938; Brewer v. Brewer, 11 Hun, 147. But in each case the only question to be determined is whether the absolute ownership is suspended beyond the statutory period. The statutory period consists of "two lives in being." The suspension, therefore, must be bounded strictly by two lives in being, and the crucial test is whether the limitations are such that the property must, within two lives in being, if ever, become absolutely vested in beneficial owners. As a general rule, where there is no gift but by a direction to executors or trustees to divide or pay at a future time, the vesting in the legatee will not take place until that time arrives. In such a case the gift is future, and not immediate; it is contingent, and not vested. Shipman v. Rollins, 98 N. Y. 311, 327; Smith v. Edwards, 88 N. Y. 92; Greenland v. Waddell, 116 N. Y. 234, 244, 22 N. E. 367; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184. This is sometimes expressed by saying that, if futurity is annexed to the substance of the gift, vesting is suspended. Everitt v. Everitt, 29 N. Y. 39, 75. But where the gift is absolute, and the time of payment only postponed, here time, not being of the substance of the gift, but relating to the payment, does not suspend the gift, but merely defers the payment. Goebel v. Wolf, 113 N. Y. 405, 412, 21 N. E. 388; Savage v. Burnham, 17 N. Y. 561, 575. Inasmuch as, as a general proposition, absolute ownership implies the right of possession, it has frequently been urged that a postponement of possession must necessarily involve a suspension of the absolute ownership of personal property. But this is not the law of New

York.　In Bliven v. Seymour, 88 N. Y. 469, 478, it was said that "whatever was said in Converse v. Kellogg, 7 Barb. 596, which warrants an inference that such deferring of payment [of a vested legacy] amounts to a suspension of the absolute ownership, has no sanction in the decisions of this court"; and it was thereupon held that such a provision does not occasion suspension.　Indeed, it seems to be fully settled now that the presence in the instrument of restrictions on mere possession does not occasion a suspension of the absolute ownership of personal property.　Whether, in any given case, the restriction is void, and therefore harmless, or is valid as a power in trust in the executors consistent with absolute vesting and with full right in the legatee to sell, assign, release, or bequeath, in either event the net result, so far as the subject of suspension is concerned, is the same, for in either event the provision for postponement of possession does not involve suspension of the absolute ownership.　Vanderpoel v. Loew, 112 N. Y. 167, 186, 19 N. E. 481; Oxley v. Lane, 35 N. Y. 340, 344, 345; Beekman v. Bonsor, 23 N. Y. 298, 317; Everitt v. Everitt, 29 N. Y. 39; Manice v. Manice, 43 N. Y. 303.

The authorities in this state favor the theory of immediate vesting, both as to real and personal property, although the statutes relating to the kinds of property differ.　The statute relating to real estate forbids the suspension of the absolute power of alienation for more than two lives, while the statute relating to personal property forbids the suspension of the absolute ownership for more than two lives. But the statutory period is the same in both cases.　It consists of two lives in being.　As to both kinds of property, the authorities in this state favor the theory of immediate vesting, and the courts are always willing to shape their decisions in doubtful cases with reference to these authorities.　Indeed, it may be said that, even where there are no words implying an immediate gift, and the title is nominally conveyed to trustees for the purposes of the trust, if the courts, from the will as a whole, can spell out a tenancy in common, they will do so for the purpose of declaring a direct vesting, and avoiding a forfeiture.　The growth of this doctrine in this state has been so fully pointed out, and the authorities illustrating the same so fully reviewed, by Judge Finch in the opinion delivered by him in Hillyer v. Vandewater (Sup.) 11 N. Y. Supp. 167, that a reference to that case is all that is necessary here, although his application of the law as expounded by him to the facts of the case before the court of appeals did not meet with the full concurrence of a majority of the court, as appears from the official report of the case in 121 N. Y. 681, 24 N. E. 999.　In this connection, and especially as the statute relating to personal property, after forbidding the suspension of the absolute ownership by any limitation or condition for more than two lives, also provides that in all other respects limitations of future or contingent interests in personal property shall be subject to the rules prescribed in relation to future estates in real property, it may be well to refer to the revisers' note on 1 Rev. St. p. 721, § 14, art. 1, tit. 2, relating to the creation and division of estates in real property, and the alienation thereof.　They said, with reference to the future estates therein mentioned:

"To prevent a possible difficulty in the mind of those to whom the subject is not familiar, we may also add that an estate is never inalienable unless there is a contingent remainder and the contingency has not yet occurred. This is the meaning of the rule of law prohibiting perpetuities, and is the effect of the definition in section 14."

This was the intention and the opinion of the revisers, and the court of appeals has in the main adopted the same rule of interpretation. See Radley v. Kuhn, 97 N. Y., at page 35.

. It thus appears that under the authorities referred to the ulterior limitation over contained in the trust created by the third paragraph of the will may be cut off, and then the remaining part of the trust sustained on the theory of an immediate vesting. I have, therefore, come to the conclusion, after a careful examination of the will as a whole, and the circumstances surrounding its execution, that the said ulterior limitation over should be cut off, and that it should be held that the estate created by the testator by the third paragraph of his will vested, upon his death, in the four children then living of Harrison and Josephine Clark, subject to the life interests of their parents, and subject to be defeated as to any such child by death without issue during the running of the life estates.

What has been hereinbefore said in relation to the trust created by the third paragraph of the will is equally applicable to the ulterior limitation over contained in the trust created for the benefit of the testator's grandson Harrison Clark, Jr., by the second paragraph of the will; such limitation being found in the third paragraph of the will in the following language:

"In the event of the death of my grandson Harrison before he shall have attained the age of thirty years, I direct that the bequest hereinbefore made to him shall be added to the trust fund provided for my son Harrison and his said wife and family, to become a part thereof, and to be managed by them, my said trustees, in the same manner as they are directed to manage the specific bequest herein made to them for the use of my said son and his said wife and family."

This limitation is for three lives in being, to wit, Harrison Clark, Jr., Josephine Clark, and Harrison Clark, and is void. Under the authorities, this limitation can be cut off, and the provision for the grandson becomes a direct gift, with postponement of actual delivery to him until he shall attain the age of 30 years. The testator uses strong words of gift in præsenti. He says: "I give and bequeath to my grandson Harrison Clark the sum of $20,000." These words should be considered as establishing a direct legacy, which, in itself, is absolute, and which is followed by an invalid condition subsequent devesting the legacy. The rule is that a direct gift, in words which, standing alone, would vest a good title, when followed by an unlawful condition subsequent, is valid, notwithstanding the declared illegality of the condition. It is only where the unlawful condition is a condition precedent that the subsequent estate does not take effect. See Oxley v. Lane, 35 N. Y. 340; Lovett v. Gillender, Id. 617. The trust created for the benefit of the said grandson should therefore be construed in conformity with the views expressed by me. The consequence is that, if he attains the age of 30 years, then the fund is to be delivered to him under the

terms of the will.    If, however, Harrison Clark, Jr., should die before attaining that age, the principal sum will go to his heirs.

In the second paragraph of the will the trustees are directed to invest the $20,000 trust fund in first mortgage notes secured on real estate in the city of Chicago, state of Illinois.    The trustees ask the instructions of the court as to the binding character of this direction.    They evidently believe they have a right to disregard it.    In this I cannot agree with them.    True, as a general rule, investments by executors or testamentary trustees of the funds in their hands, which take those funds beyond the jurisdiction of the court, will not be sustained; but, as was held in Ormiston v. Olcott, 84 N. Y. 339, the rule is not so rigid as to admit of no possible exceptions, and, moreover, relates only to voluntary investments by a trustee having the fund in his hands, and full opportunity and freedom of choice.    In the case at bar the testator directed the investment in first mortgage bonds secured on real estate in the city of Chicago, and the direction is mandatory, as long as compliance with it remains feasible.

The trustees also ask the instruction of the court as to their powers under the third paragraph of the will, which provides that they shall invest the trust fund therein referred to in first mortgage notes, or other first-class securities, which will bear as high rate of interest as said trustees shall deem consistent with the safety of the investment.    In exercising their powers in that respect, the trustees are bound to see to it (1) that the securities are first-class, and (2) that they are safe.    After that has been done, the further duty arises to make due discrimination between the securities falling within the description with the view of selecting such as bear the highest rate of interest.    And the selection should be made with reference to the law of this state as to the class of securities in which trustees are justified to invest.    Prior to 1889 the leading case upon that point was King v. Talbot, 40 N. Y. 76.    In 1889 it was provided by chapter 65 of the Laws of said year that it shall be lawful for executors, administrators, guardians, and trustees, and others holding trust funds for investment, to invest the funds so held by them in trust in bonds or stocks of any of the cities of this state issued pursuant to the authority of any law of this state. By the third paragraph of the will the trustees are directed to pay to Josephine, the wife of the testator's son Harrison Clark, a portion of the income of the trust fund, to be determined by them, for the use of herself and children.    After such determination, and the payment thereunder of the amount to Mrs. Josephine Clark, their responsibility ceases, and they are not charged with the duty of supervising her expenditure of the same.

And, finally, the trustees ask the court to decide upon the language of the will, whether their discretion in determining how much of the income of the trust fund shall be paid to the testator's son Harrison, or how much to his wife for the use of herself and children, is subject to control by the court.    The language of the will is found in the second subdivision of the third paragraph, and is as follows:

"To pay semiannually so much of the income derived from such investment as they may think necessary for the comfortable support of my son Harrison, they keeping in view the necessities of his wife and children; and the remainder of such income, semiannually to Josephine, wife of my said son Harrison, for the use of herself and children. In thus providing for the support of my said son Harrison and his wife and children, I intend to and do give to my said trustees large discretion as to how they shall divide such income, desiring that they should act with reference thereto as they think I would act, if living."

There can be no doubt that, however large the discretion of trustees may be in the exercise and execution of their trusts, the court never loses its power to review the use of this discretion, and, if need be, to correct any abuse in its exercise. Ireland v. Ireland, 84 N. Y. 321, 325; Holden v. Strong, 116 N. Y. 471, 474, 22 N. E. 960; Perry, Trusts, § 511; Collister v. Fassitt, 7 App. Div. 20, 39 N. Y. Supp. 800; Bound v. Railroad Co., 50 Fed. 854; Banning v. Gunn, 4 Dem. Sur. 337, on page 339; Mason v. Jones, 4 Sandf. Ch. 623; Bryan v. Knickerbacker, 1 Barb. Ch. 409; Forman v. Whitney, *41 N. Y. 165; Wormley v. Wormley, 8 Wheat. 421, 442; Hancox v. Wall, 28 Hun, 214.

In Ireland v. Ireland, 84 N. Y. 321, Earl, J., says, on page 326 et seq.:

"A court of equity, by virtue of its general jurisdiction over trusts and trustees, can, upon a proper state of facts, direct how their discretion shall be exercised; in other words, how the trust fund shall be administered."

In this case the court directed the division of the income among the beneficiaries in equal proportions.

In Holden v. Strong, 116 N. Y. 471, 22 N. E. 960, the action was brought to procure a judicial construction of the will of Heman Holden, deceased, the father of the plaintiff, and to procure a decree giving directions to Charles D. Strong, the executor and trustee, as to the amount he should pay over annually to the plaintiffs. The trial court found as facts that Heman Holden died, * * * leaving a last will, * * * and gave to such trustee the residue and remainder of his estate in trust for the plaintiff during his natural life, directing that the estate should be converted into money, and invested; and gave to such trustee full power and authority to use so much of the trust fund, either interest or principal, as shall, in his judgment and discretion, be necessary for the proper care, comfort, and maintenance of the plaintiff. The similarity of this case to the one under consideration is marked. They are both brought for the construction of a will, and the court in both is asked to give its direction to the trustees as to how they shall exercise the discretion vested in them by the respective testators; and while, on a technicality, in the case of Holden v. Strong, the court did not decide this latter matter, Haight, J., says on page 474, bottom of page, and page 475, 116 N. Y., and pages 961, 962, 22 N. E.:

"We wish to state for the future guidance and conduct of the trustee that we are not entirely satisfied with the manner in which he has discharged the duties of his trust. * * * We fully agree with the trial court in the construction of the will that the plaintiff is entitled to his support and maintenance according to his condition in life." "As long as the plaintiff remains rational, prudent, industrious, and saving, there can be no abuse of discretion in allowing him to

take the annual or semiannual appropriations to expend for his own comfort and maintenance, in his own way and in the gratification of his own choice."

In, Bryan v. Knickerbacker, 1 Barb. Ch. 409, Ruggles, V. C., says, on pages 411, 412:

"The exercise of a discretion by a trustee is subject to the regulation and control of the court, so far, at least, as to prevent its abuse. The discretion must be reasonable."

In Forman v. Whitney, *41 N. Y. 165, the will contained the following provision:

"I give and bequeath to my wife, during her natural life, the interest of $3,000, or so much of said interest as my executors may deem necessary for her comfort."

The court held that the discretion vested in the executors was not absolute, but must be exercised reasonably; and Davis, J., says, on page 168:

"The comfort for which the testator provided was not bound by a mere quantum sufficit to eat, to drink, and to wear. The word embraces whatever is requisite to give security from want, and furnish reasonable physical, mental, and spiritual enjoyment; * * * in short, to possess those nameless currents of enjoyment which take their rise in the assurance of money in the pocket, and more to come."

Relying upon these authorities, the defendant Harrison Clark asks the court to direct the trustees to pay to him one-quarter of the net income of the trust fund established for the benefit of himself and his family. None of the parties objects to it, and the briefs submitted by counsel for Josephine Clark states that, so far as she has the right to do so on her individual behalf, she makes no objection to such an order, but that she is advised that she has no authority to give a consent which shall in any way affect the rights of her minor children. The testator speaks of the "comfortable support" of his son, and of the "necessities" of his wife and children,—a distinction which fairly belongs to a proper consideration of the matter which the testator has put in the charge of the trustees. So, while it is true that the will of the testator is to be construed in the light of the circumstances surrounding the estate and the beneficiaries at the time it was made, it is equally true that the application and distribution of the income should be made in view of the circumstances as they now exist.

It appears that the trust fund under consideration amounts to over $100,000, and that its net income will be about $5,000. One-quarter of this income would not be an excessive allowance for the "comfortable support" of Harrison Clark, and under the circumstances, so far as they have been disclosed, would even have to be considered as a fair and reasonable allowance. Consequently, if the trustees should see fit to pay to him one-quarter of the said income, and the remaining three-quarters to his wife for the benefit of herself and children, the court would have no objection to it. Nevertheless, I am unwilling to make an absolute order to that effect. There evidently were family reasons, which do not as yet fully appear, which induced the testator to make the provision in the form he made it, and to give to the trustees large discretion as to the division of said income, and to express to them his desire to.

act in the matter as they might think he would act if living. . I shall therefore content myself with the foregoing simple expression of my views, and leave the trustees free to act thereunder according to their own conscience. The decree to be entered in this case should reserve, however, to Harrison Clark the right to specially apply at any time to the court for modification upon proof that the trustees arbitrarily and without sufficient reason withhold from him a part of the said income which under all the circumstances he should in all fairness receive.

Let a decree be presented for settlement in accordance with this opinion.